993 P.2d 1055 (1999)
196 Ariz. 91
In re J.G.
No. 1 CA-JV 98-0220.
Court of Appeals of Arizona, Division 1, Department E.
March 23, 1999.
Review Denied September 21, 1999.
*1056 Richard M. Romley, Maricopa County Attorney by Diane Gunnels Rowley, Deputy County Attorney, Phoenix, Attorneys for Appellee.
Dean W. Trebesch, Maricopa County Public Defender by Suzanne Weschler Sanchez, Deputy Public Defender, Mesa, Attorneys for Appellant.

OPINION
FIDEL, Presiding Judge.
¶ 1 After a series of hearings to review the probationary status of J.G. and to determine whether he should be released from a residential treatment center and returned home, the juvenile court returned J.G. to his home, but subject to the rigorous provisions of Juvenile Intensive Probation Supervision (JIPS). J.G. appeals his assignment to JIPS on various grounds, including that (1) in the absence of any charge that he had violated the terms of standard probation, the juvenile court could not move him to JIPS; and (2) because the juvenile court gave him no notice before the last review hearing that it would consider placing him on JIPS, the juvenile court failed to meet the requirements of due process. Finding no error on these or other grounds asserted, we affirm.

Facts & Procedural History
¶ 2 J.G., age thirteen, was adjudicated delinquent after admitting to shoplifting. Although J.G. was placed on standard probation, he was also placed in the physical custody of Westbridge, a residential treatment center, in response to a history of drug abuse, suicidal ideation, and running away.
¶ 3 At intervals of approximately thirty days, the juvenile court held hearings to review J.G.'s placement. Participants repeatedly discussed the questions when, and under what conditions, to allow J.G. to return home. At several of the hearings, J.G.'s probation officer and other participants expressed concern for J.G.'s physical safety, given his propensity for drug abuse and self-mutilation.
¶ 4 At the final review-of-placement hearing, J.G.'s probation officer detailed J.G.'s continued problems for the court, including a recent episode of self-mutilation, and recommended that J.G. be released from Westbridge but placed on JIPS. Although this recommendation was not contained in any prior written probation report to the court, J.G., his mother, his guardian ad litem, and his Westbridge counselor concurred. J.G.'s lawyer objected, however, that the court could not place J.G. on JIPS unless he had violated the terms of his standard probation.
¶ 5 The court terminated J.G.'s placement at Westbridge, returned him to the physical custody of his mother, and placed him on JIPS. J.G. has filed this timely appeal.

*1057 REVISION OF TERMS
¶ 6 J.G. renews his argument that the juvenile court could not impose JIPS in the absence of an allegation that he violated the original terms of his probation. We disagree. The juvenile court has continuing authority to modify the terms of a delinquent juvenile's probation. See Ariz. R.P. Juv. Ct. 10.1.[1] The juvenile court must exercise this authority consistently with the standards of due process; it does not take a violation, however, to trigger a review or revision of a juvenile's probationary terms. See Pinal County Juv. Action No. J-169 ("Pinal J-169 "), 131 Ariz. 187, 189, 639 P.2d 377, 379 (App.1981).

NOTICE
¶ 7 Due process requires that juvenile probationers receive notice and an opportunity to be heard before the court modifies the terms of their probation. See In re Marie G., 189 Ariz. 632, 633, 944 P.2d 1246, 1247 (App.1997); Pinal J-169, 131 Ariz. at 189, 639 P.2d at 379.
¶ 8 J.G. undisputedly received a hearing, at which he, his guardian ad litem, his mother, and his lawyer addressed the court. But J.G. argues that the juvenile court deprived him of due process because neither he nor his counsel received advance notice that JIPS would be recommended and considered at the hearing.
¶ 9 To answer this contention, it is useful to compare this case with Pinal J-169. There, the juvenile was initially placed on home probation, but was warned that, if he didn't "`straighten up [his] act,'" he would be "`placed outside the home.'" Id. at 188, 639 P.2d at 378. Two and one-half months later, the juvenile court convened a hearing and placed the juvenile with a private agency. However, "the juvenile was given no notice of the reasons for the ... hearing, nor was he even given notice that such a hearing was to be held." Id. at 189, 639 P.2d at 379. We found this lack of notice to violate due process. Id.
¶ 10 Here, in contrast, J.G. was given notice of both the hearing and its subject. Indeed, the subject of the hearing had been the ongoing subject of past hearingswhether J.G. was yet ready to end his stay in residential placement and return to his home and whether probationary conditions might be devised that would permit him to do so safely. J.G. and his lawyer were given the opportunity to participate fully in these discussions.
¶ 11 We recognize that J.G. lacked notice that the juvenile court might turn to JIPS as the specific means to permit him safely to return home. As participants in an ongoing process, however, J.G. and his counsel knew that the juvenile court would consider a variety of means to secure that end. Cf. Maricopa County Juv. Action No. JV-510312, 183 Ariz. 116, 118, 901 P.2d 464, 466 (App.1995) (the juvenile court has broad discretion in determining the appropriate disposition for delinquent juveniles). And JIPSwhich provides greater supervision than standard probationwas an obvious means to be considered for the oversight of a juvenile with J.G.'s extensive needs.[2] Under the circumstances, we do not find that J.G. lacked the notice that due process requires.

DOUBLE JEOPARDY
¶ 12 Describing JIPS as a "punishment" more severe than the juvenile court originally imposed, J.G. argues that, by placing him on JIPS, the trial court subjected him to double jeopardy by punishing him twice for the same offense. See Gila County Juv. Action Nos. DEL 6280, 6281, 6282, 169 Ariz. *1058 53, 816 P.2d 950 (App.1991). This argument lacks merit.
¶ 13 Probation is not punishment; it is the suspension of sentence under conditions designed to rehabilitate the probationer. See Ariz. R.P. Juv. Ct. 10(b); State v. Foy, 176 Ariz. 166, 169, 859 P.2d 789, 792 (App.1993). When the juvenile court imposes probation, the court retains jurisdiction and discretion to modify or supplement the terms of probation. See Ariz. R.P. Juv. Ct. 10.1; Ariz. R.Crim. P. 27.2; State v. Contreras, 180 Ariz. 450, 453, 885 P.2d 138, 141 (App.1994); see also Maricopa County Juv. Action No. JV-110720, 156 Ariz. 430, 433, 752 P.2d 519, 522 (App.1988) (although criminal rules are generally inapplicable to juvenile proceedings, courts may look to adult procedures for guidance). In placing J.G. on JIPS, the court modified the terms of his probation, but it did not subject him to an additional punishment in violation of the Double Jeopardy Clause.

JIPS GUIDELINES
¶ 14 Finally, J.G. argues that the juvenile court abused its discretion by violating the Arizona Supreme Court guidelines for imposing JIPS and by failing to make a record of its factual reasons for imposing JIPS. See A.R.S § 8-352(B) & (D).
¶ 15 Turning first to the JIPS guidelines, we observe of them, as we have observed of others, that they are "just that: guidelines; they are not mandatory," nor do they bind the court. Pinal County Juv. Action No. JV-9404492, 186 Ariz. 236, 238, 921 P.2d 36, 38 (App.1996); see also Maricopa County Juv. Action No. JV-512016, 186 Ariz. 414, 418, 923 P.2d 880, 884 (App.1996). The guidelines define three classes of juveniles for whom JIPS is appropriate, and one of them consists of juvenile offenders recommended for placement outside the home. See Arizona Juvenile Intensive Probation Supervision Desktop Guide at 2.5-2.6 (Arizona Supreme Court, Juv. Justice Serv. Div., Dec. 1998). As J.G.'s initial placement was indeed outside the home, the juvenile court did not abuse its discretion in finding JIPS a suitable transitional means to move J.G. from a residential treatment center to home placement.
¶ 16 Turning to the JIPS statute, it requires the juvenile court to consider "the juvenile's prior record, the facts and circumstances of the current delinquent act or technical violation of probation and the [probation officer's] disposition summary report." A.R.S. § 8-352(C). It also requires the court to set forth on the record its reasons for imposing JIPS. See A.R.S. § 8-352(D).
¶ 17 The juvenile court erred by failing to specify its reasons for imposing JIPS. We may affirm a placement on juvenile intensive probation, however, despite the absence of specific findings, when the record demonstrates that the trial court has considered the statutory factors. See Navajo County Juv. Action No. 92-J-040, 180 Ariz. 562, 564, 885 P.2d 1127, 1129 (App.1994). Here, the record is rife with expressions of concern from adults involved in J.G.'s care that to release him to his mother's custody would place J.G. at serious risk for self-harm unless intensive supervisory conditions were imposed. J.G.'s probation officer described the severity of his drug addiction and recounted a recent episode of self-mutilation. His guardian ad litem expressed a "terrible concern regarding his safety." The juvenile's mother said of JIPS, "I would like that for an extended period of time. That would make me feel more comfortable. And I think it is a safety issue. I would agree." J.G. himself said, "I don't have any problem with it." The record amply supports the decision to place J.G. on JIPS.

CONCLUSION
¶ 18 For the foregoing reasons, we affirm the juvenile court's ORDER modifying the terms of probation.
CONCURRING: SHELDON H. WEISBERG, Judge, and E.G. NOYES, Jr., Judge.
NOTES
[1] Rule 10.1 provides in pertinent part:

The court may modify any condition which it has imposed or modify any regulation imposed. . . . The court may hold a hearing on request of a party or on its own motion to determine the appropriateness of any modification or clarification. Written notice of all modifications or clarifications shall be given to the probationer.
[2] At the next to last review hearing, J.G.'s counsel urged the court to release J.G. to his mother's custody and place him on "the Southwest Keys and Tracking Program, or home detention or electronic monitoring." We note that these measures are comparable to those the court ultimately imposed. See Ariz.Rev.Stat. Ann. ("A.R.S.") § 8-351.