63 P.3d 1065

**In re MIGUEL R.**

**In re Jose J.**

**Nos. 1CA–JV 02–0016, 1CA–JV 02–0072.**

Court of Appeals of Arizona,
Division 1, Department E.

Feb. 25, 2003.

Terry Goddard, Attorney General, by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Richard M. Romley, Maricopa County Attorney by Linda Van

Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellee.

James Haas, Maricopa County Public Defender, by Theresa M. Armendarez, Helene F. Abrams, Phoenix, for Appellants.

## OPINION

PATTERSON, Judge.

¶ 1 This consolidated appeal arises from the juvenile courts' dispositions requiring two juveniles to participate in the Maricopa County Juvenile Drug Court ("Drug Court") program as a special term of standard probation. On appeal, both juveniles contend that the court abused its discretion by requiring involuntary participation in Drug Court and that such participation in Drug Court violates fundamental constitutional rights. We conclude that (1) the purposes of Drug Court are directed towards rehabilitation and (2) based upon the record before us, the juveniles' constitutional rights have not been violated.

¶ 2 We have jurisdiction pursuant to Arizona Rules of Procedure for the Juvenile Court 88 through 99.

## I. DISCUSSION

### A. Abuse of Discretion

¶ 3 The court has "broad power to make a proper disposition" after adjudicating a juvenile delinquent. *Maricopa County, Juv. Action No. JV-510312*, 183 Ariz. 116, 118, 901 P.2d 464, 466 (App.1995). When making a disposition, the court may award the delinquent juvenile to the probation department, "subject to any conditions as the court may impose." Ariz.Rev.Stat. ("A.R.S.") § 8-341(A)(1)(b) (Supp.2002). That disposition will not be disturbed absent an abuse of discretion. *In re Kristen C.*, 193 Ariz. 562, 563, ¶ 7, 975 P.2d 152, 153 (App. 1999).

¶ 4 Rehabilitation, not punishment, is the purpose of disposition after an adjudication of delinquency. *Id.* at ¶ 8, 975 P.2d 152; *see also Maricopa County Juv. Action No. JV-500210*, 177 Ariz. 3, 5, 864 P.2d 560, 562 (App.1993) (the purpose of sentencing schemes for adults is punishment but for juveniles, it is rehabilitation); Ariz. R.P. Juv.

Ct. 31(A) ("The court shall impose on the juvenile conditions of probation that will promote rehabilitation and public safety."). "A condition of probation which does not violate basic fundamental rights and bears a relationship to the purpose of probation will not be disturbed on appeal." *Pima County Juv. Action No. J-20705-3*, 133 Ariz. 296, 298, 650 P.2d 1278, 1280 (App.1982).

### 1. Drug Courts

¶ 5 Drug courts emerged during the early 1990's as an alternative approach for lesser drug offenses. In contrast to the traditional system that provided little substance abuse treatment, drug courts combined "substance abuse treatment, sanctions, and incentives with case processing to place nonviolent drug-involved defendants in judicially supervised rehabilitation programs." Drug Courts Program Office, Office of Justice Programs, United States Dep't of Justice, *About the Drug Courts Program Office Fact Sheet FS 000265* (June 2000), *available at* **http:// www.ncjrs.org/ pdffiles1/ojp/fs000265.pdf (last visited Jan. 28, 2003)**. Congress added its support by enacting the 1994 Crime Act, which authorized the Attorney General to make grants to states and local communities to establish drug courts. 42 U.S.C. § 3796ii (repealed April 26, 1996); *see also* A.R.S. § 13-3422 (2001) (authorizing the establishment of drug courts).

¶ 6 Juvenile drug courts developed during 1995 and 1996, with the goal of "provid[ing] immediate intervention in the lives of children and/or parents using drugs ... and structure for the litigants through the ongoing, active involvement and oversight of the drug court judges." Office of Justice Programs Drug Court Clearinghouse and Technical Assistance, *Juvenile and Family Drug Courts: An Overview* (1998), *available at* **http://american.edu/ justice/publications/juvoverview.htm (last visited Jan. 28, 2003)**. General rehabilitative goals include providing the opportunity to become clean and sober, and the skills and support necessary to succeed in school, develop positive relationships, resist further criminal activity, and lead productive lives. *Id.* Proponents of

juvenile drug courts felt that high caseloads and lack of treatment resources contributed to the juvenile court "becoming a forum focusing more on the determination of guilt than on the court's original mission of rehabilitation." *Id.* With this background in mind, we turn to the juveniles' arguments.

¶ 7 The juveniles argue that the juvenile court abused its discretion for two primary reasons. First, they contend that involuntary placement in Drug Court does not promote rehabilitation and is not in fact reasonably related to the purpose of juvenile probation. They explain that because court-ordered participation cannot effect rehabilitation, the "therapeutic purpose is undermined." Next, they argue that the facts of their respective cases do not support their placement in Drug Court. We reject these arguments, addressing collectively their general argument and respective dispositions.

¶ 8 Despite their contention that involuntary placement in Drug Court does not promote rehabilitation and is not reasonably related to rehabilitation, the juveniles concede that the purpose of Drug Court is rehabilitative in nature: "The goal of the program is to reduce juvenile drug and alcohol abuse."[1] Given that the goal of juvenile probation is rehabilitation, we are simply unable to say that Drug Court and its goals are not reasonably related to that purpose.

¶ 9 The juveniles argue, however, that because they do not want to participate, a team approach is lacking and therefore involuntary participation will not effect rehabilitation. As we have already stated, rehabilitation is the goal of all juvenile dispositions. *Any* disposition that requires *court-ordered* compliance, participation, counseling, detention, or community service to engender rehabilitation can hardly be regarded as voluntary. It is, however, the "inherent power of the court" to impose conditions of probation as it sees fit that will lead to rehabilitation. *No. J–20705–3*, 133 Ariz. at 297, 650 P.2d at 1279.

¶ 10 Each juvenile also complains that the imposition of 365 days is an abuse of discretion because if deferred, the juvenile remains under the threat of detention for longer than one year. Arizona Revised Statutes § 8–341(A)(1)(b) authorizes incarceration in juvenile detention for not longer than one year. We do not find an abuse of discretion in subjecting the juveniles to the possibility of 365 days of detention. The actual term served would not exceed the lawful maximum–365 days. The detention time imposed at the disposition is based on the juveniles' past transgressions; only its deferral is based on future conduct. Drug Court participants are given one year to complete the four phases, which requires earning 360 total "points." The goal is for each juvenile to earn 36 points a month thus allowing them to "graduate" in ten months. [TR 5/17 at 30] Neither juvenile demonstrates that he has been subjected to detention for longer than a year. Thus, the issue the juveniles complain of is not ripe for review.

### 2. *In re: Miguel R.*

¶ 11 The juvenile pled delinquent to possession of marijuana, a Class 6 undesignated felony. At the initial hearing, the court outlined the possible dispositions including standard probation, juvenile intensive probation ("JIPS"), juvenile detention, Adobe Mountain, restitution, community service, and drug counseling. The juvenile's mother made the following statement to the court:

> I wondered if there was some place where they would teach him not to smoke marijuana to teach him that that [sic] is not good because I talked to him a lot and it does seem like he likes it but Miguel is a very good boy at home . . . . but I don't know why he likes to smoke and I know he likes to smoke.

The court ordered weekly drug testing pending the disposition hearing and informed the juvenile that the outcome would depend on him and whether he stopped using marijuana. At the next hearing, the court confirmed

---

1. The juveniles also rely on an assessment of the Maricopa County Juvenile Drug Courts prepared for the Maricopa County Juvenile Probation Department to bolster their argument that this Drug Court is not rehabilitative in effect. Although attached as Appendix 1 to their opening brief, it is not part of the record on appeal and will not be considered in our deliberations.

that the juvenile had spoken to Drug Court personnel, was interested and willing to participate, and that the mother was supportive of the program.

¶ 12 At the disposition hearing, the state recommended that if the juvenile did not participate in Drug Court, he at least drug test weekly and participate in the Treatment Assessment Screening Center ("TASC") program, the NCTI Minor in Possession class, and the HIP First Offender course. Counsel for the juvenile informed the court that she had researched Drug Court and concluded that it was premature for the juvenile in light of the probation officer's recommendation of standard probation. Counsel also noted that she had told the juvenile about the restrictive nature of Drug Court but that she was unable to communicate with the mother because of language differences.[2]

¶ 13 The court addressed the possible burden on the juvenile's mother but found that she was willing to make sacrifices so she could participate in the program. The mother indicated her accord with this statement by nodding her head for the court. After informing the juvenile that the disposition was not punitive but rehabilitative and intended to provide treatment, the court placed him on standard probation with all the special terms and conditions of Drug Court.

¶ 14 We do not find an abuse of discretion in the disposition of the court. Both the standard and special terms of his probation were intended to put the juvenile on the right track. Standard terms included refraining from drugs and alcohol, obeying the law and parental rules, not associating with anyone who is using illegal substances, and cooperating with drug and alcohol testing and treatment. Special terms included appearing at all Drug Court hearings, attending school every day, and detainment for failure to follow the terms of probation. Furthermore, the juvenile's mother asked for help for her son and indicated her willingness to participate in the program, and the juvenile initially wanted to participate. Hence,

we will not disturb the juvenile court's disposition.

### 3. *In re: Jose J.*

■ ¶ 15 The juvenile pled delinquent to theft, a class 6 felony, and was placed on probation. He was charged with violating that probation by failing to cooperate in drug testing after he was observed pouring the contents out of a bag during testing, and by testing positive for marijuana on five occasions. The juvenile admitted the failure to test, and the court ordered him screened for Drug Court, to which counsel for the juvenile objected.

¶ 16 At the violation of probation ("VOP") disposition hearing, the court noted that the probation officer recommended Drug Court for the juvenile and counsel for the juvenile again objected. The objection stemmed from the fact that the juvenile was on probation for theft, not drugs, and from the assertion that the positive marijuana screens were false positives, in addition to constitutional concerns. Counsel further stated:

> His mother would like to see him in the program, but my client does not wish the program. Mom tells me that the PO threatened her with a recommendation for Adobe if he didn't go into the program. I don't imagine that the [sic] court's position. At least I would hope not.

¶ 17 The court ordered the juvenile to shadow Drug Court for thirty days. During that time, the juvenile again tested positive for marijuana. Transcripts from one Drug Court hearing indicate that the court continued to explore other disposition alternatives but that the juvenile's mother concurred in a disposition that included Drug Court.

> THE COURT: Now, its my understanding the mother · is still in favor of the drug court. Is that correct, Mom?
>
> MS. J: Yes.

Moreover, the juvenile himself asked for help as evidenced by the following exchange:

2. Counsel referred to "discussions" within the office as to how to approach the issue of Drug Court and informed the court that if a juvenile is to be screened for Drug Court, the defender's office would like to be present or in a position to

advise the juvenile by giving full disclosure about the program and its possible sanctions before the juvenile says "Yes, I want to go into that program."

THE COURT: So you are going to have to quit using. Do you understand?

THE JUVENILE: I understand that, but if everybody knows I have a problem why can't they see that I need help? I don't want to go to the drug court. I would like a program. I'm not saying nothing. I just—its hard for me, and I can't really do this by myself.

. . . .

I'm not asking for somebody to be there with me the whole time to watch over me, but I need something better to do.

. . . .

THE COURT: The reason I am [deferring disposition] is to try to figure out the appropriate program for you. And you are right, you are going to need help. You can't do this on you own.

THE JUVENILE: I admit that.

¶ 18 At the final VOP disposition hearing, counsel for the juvenile elicited testimony from the probation officer regarding less-restrictive alternatives to Drug Court. Following the probation officer's recommendation, however, the court imposed Drug Court as a special term of probation. The court acknowledged the existence of the less-restrictive programs, but stated that none were suitable for this juvenile because the other programs were of shorter duration and had "virtually no accountability." The juvenile's mother expressed some concern about the time commitment, but after an off-the-record discussion, stated that "[i]t's okay then."

¶ 19 Again, we do not find an abuse of discretion in the disposition of the court. The juvenile was already on standard probation, with special terms that included the TASC ten-week program, deferred detention contingent on the juvenile self-reporting for HIP, and forty hours of community service. In this instance, the juvenile asked for help and was directed to shadow Drug Court for thirty days. Notwithstanding the fact that his mother indicated that she wanted him in Drug .Court, the court deferred the VOP disposition hearing to allow time to investigate alternative programs. We find nothing in the record to indicate that the court's disposition was an abuse of discretion and

consequently it will not be disturbed on appeal.

### B. Constitutional Issues

¶ 20 Much of what the juveniles seek in this appeal is an advisory opinion about the constitutionality of Drug Court administration. Courts should "not render advisory opinions anticipative of troubles which do not exist; may never exist; and the precise form of which, should they ever arise, [the court] cannot predict." *Velasco v. Mallory,* 5 Ariz. App. 406, 410–11, 427 P.2d 540, 544–45 (App. 1967). Therefore, we limit our review to the record before us.

### 1. Due Process

¶ 21 Both juveniles argue that their fundamental rights are violated by involuntary placement in the Drug Court program. They allege a due process violation, in that, *if* they violate a Drug Court condition, the procedures prevent them from receiving written notice, a contested hearing, and an opportunity to present evidence.

¶ 22 It is undisputed that a juvenile is entitled to due process before detention can be imposed for a probation violation. *See In re Richard M.,* 196 Ariz. 84, 86, 993 P.2d 1048, 1050 (App.1999); *In re Marie G.,* 189 Ariz. 632, 634, 944 P.2d 1246, 1248 (App. 1997). Due process requires notice and a hearing before a juvenile is subject to weekend detention. *Id.* In addition, probation conditions must be written if the violation of such will lead to revocation of probation. *Maricopa County Juv. No. JV–508488,* 185 Ariz. 295, 301, 915 P.2d 1250, 1256 (App. 1996).

¶ 23 An integral part of Drug Court is the weekly hearing held before a judge, who reviews the juvenile's compliance with the program. Detention of 365 days is deferred at each hearing if the juvenile is found in compliance with the terms of probation. These standard and special terms of probation are clearly spelled out in the probation form and signed by the juveniles and at least one parent. The final term places the juveniles on notice that "[i]f you do not follow all of the terms, the court may impose part or

all of any unused detention time at the next review hearing."

¶ 24 Both juveniles essentially complain that swift Drug Court procedures do not provide them with adequate notice of a probation violation in order to participate in a meaningful hearing. We find *In re J.G.*, 196 Ariz. 91, 993 P.2d 1055 (App.1999), instructive on this issue. After his adjudication, J.G. was placed on standard probation and in the physical custody of a residential treatment center. *Id.* at 92, 993 P.2d at 1056. The court held hearings every thirty days to review the placement, and at the final hearing, he was released from the center but placed on JIPS. *Id.* J.G. appealed, arguing *inter alia* that he did not receive advance notice of the possibility of JIPS. *Id.* The court recognized that J.G. did not receive specific notice of the possibility of JIPS, but that he did have "notice of both the hearing and its subject." *Id.* at 93, 993 P.2d at 1057. The court noted that "[i]ndeed, the subject of the hearing had been the ongoing subject of past hearings" and that both "J.G. and his lawyer were given the opportunity to participate fully in these discussions." *Id.; cf. Pinal County Juv. Action No. J–169*, 131 Ariz. 187, 189, 639 P.2d 377, 379 (App.1981) (holding that the juvenile received inadequate notice of a hearing modifying his probation because he received *no* notice of the hearing or the reasons for it).

¶ 25 In the instant cases, the juveniles received both written and verbal notice of the hearings, probation terms, and possibility of detention. The written probation form specifically required that the juveniles attend all scheduled Drug Court hearings, defined the probation terms, and stated that detention may be imposed for violating the terms of probation. At the disposition hearings, the juvenile court discussed the probation terms with the juvenile and their parent and outlined the particulars of Drug Court. Moreover, the juveniles and their respective counsel have the opportunity to fully participate in the hearing prior to the imposition of any actual detention time.

¶ 26 As the juvenile court indicated:

This juvenile will always have the right to due process and the right against self-incrimination through the drug court program.

If I bring this juvenile up here on a Friday and I ask him to tell me about the week, and the information that I have is that the juvenile used or violated curfews, and the juvenile sits here and says I deny that, I will do the further drug screening or, if necessary, I will have a trial. If necessary we'll address it through a violation of probation petition.

. . . .

. . . . The juvenile will always have a right to a hearing, to notice, and will always know before they violated the drug court terms what the consequences will be at the outset.

. . . .

So if there is a situation where [the juveniles] do not admit [a probation violation], I do not detain them at that point in time. I set it for further hearing and allow the probation officers to obtain the evidence they need and the juvenile to obtain the evidence he or she needs.

On the record before us, we do not find that the notice and hearing procedures violated the juveniles' rights to due process.[3]

### 2. Fifth Amendment Privilege

■ ¶ 27 Next, the juveniles maintain that the Drug Court terms impliedly impinge upon their Fifth Amendment privilege against self-incrimination but give few particulars as to how this occurs. We agree that probation terms cannot compel the waiver of a Fifth Amendment privilege against self-incrimination, *State v. Eccles*, 179 Ariz. 226, 228, 877 P.2d 799, 801 (1994), nor can the

---

**3.** The juveniles suggest that we resolve these questions by reference to subsequent minute entries from Drug Court hearings showing that the juveniles were in fact detained after a Drug Court hearing. A minute entry and an MCI for Jose filed September 11, 2002, is properly supplemented to the record on appeal. However, the record is bereft of corresponding transcripts or procedural documentation about Drug Court. Therefore, we are unable to conduct a proper review of the matter based on the undeveloped record. We suggest, as we did at oral argument, that these matters are better addressed in a petition for special action.

state "revoke probation for the legitimate exercise of the Fifth Amendment privilege," *Minnesota v. Murphy,* 465 U.S. 420, 438, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). However, both *Eccles* and *Murphy* emphasize that a "legitimate exercise" of the privilege occurs when a probationer declines to answer questions calling for information that would be incriminatory in a separate criminal proceeding. *Eccles,* 179 Ariz. at 228, 877 P.2d 799; *Murphy,* 465 U.S. at 435, 104 S.Ct. 1136.

¶ 28 But *Murphy* makes it crystal clear that "[a] State may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege." *Id. Murphy* further elucidates that "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." *Id.* at n. 7; *see also Eccles,* 179 Ariz. at 228, 877 P.2d 799 (a probationer "must truthfully answer all questions that could not incriminate him in future criminal proceedings").

¶ 29 The juveniles cite *In re Gault* for the proposition that "[a] juvenile delinquency proceeding that may result in detention constitutes criminal prosecution for self-incrimination purposes." In fact, *Gault* states that "juvenile proceedings to *determine* 'delinquency,' which may lead to commitment to a state institution, must be regarded as 'criminal' for purposes of the privilege against self-incrimination." *Gault,* 387 U.S. at 49, 87 S.Ct. 1428 (emphasis added). Determination of delinquency occurs at the adjudication hearing, which is unrelated to a Drug Court hearing. *See Maricopa County Juvenile Action No. J–72918–S,* 111 Ariz. 135, 137, 524 P.2d 1310, 1312 (1974) ("[R]evocation of a juvenile's probation is not a part of the finding of delinquency.")

¶ 30 In their opening brief, the juveniles argue prospectively that admissions (or lack thereof) during Drug Court or to their probation officer are impermissibly used to justify imposition of the deferred detention, thereby enhancing their sentence.[4] They rely on *Jones v. Cardwell,* 686 F.2d 754 (9th Cir.1982), for their premise that such "confessions" impermissibly lead to an enhanced sentence. In *Jones,* while awaiting sentencing for burglary and rape, the defendant confessed to his probation officer about the commission of other crimes. *Id.* at 755. The judge relied on these admissions during sentencing to impose a harsher sentence. *Id.* The Ninth Circuit held that the judge's discretion in sentencing did not extend to the use of statements obtained in violation of the Fifth Amendment privilege against self-incrimination. *Id.* at 756.

¶ 31 *Jones* is distinguishable in this regard because the defendant in *Jones* made the statements after conviction but *before* sentencing. In the juvenile arena, a disposition hearing is analogous to a sentencing hearing. Here, both juveniles had a disposition hearing and both received a disposition of probation, which included 365 possible days of detention. Thus, the detention cannot be enhanced because it is already imposed; the detention can only be deferred. *See* discussion *supra* paragraph 10. We recognize that Jose was ordered to shadow Drug Court pending disposition for his probation violation. However, he does not argue that a statement, made within the context of Drug Court, was used to enhance his disposition, nor do we find any evidence in the record of such an occurrence.[5]

¶ 32 Miguel further argues, however, that statements made to his probation officer in the context of Drug Court Screening enhanced his disposition, namely by the imposition of special terms requiring Drug Court. He argues that because the juvenile court

---

4.  *See* discussion above note 3.

5.  After ordering Jose to shadow Drug Court, the juvenile court specifically told him that "[y]ou also need to be aware that while you're shadowing Drug Court, I cannot detain you for drug usage. Although I can revoke your release status and place you in detention pending your disposition on May 15th. So I cannot detain you for violating the Drug Court terms, but if I feel that you are out there using and are putting yourself in danger, I can revoke your release status pending your disposition hearing."

relied on the Drug Court Screening Report ("Report") as one factor in its consideration, the admissions contained within were impermissibly used. First, we do not find from the record that the juvenile court relied on specific statements as alleged, only that the Report was considered in the juvenile's disposition. Second, the juvenile was not in custody nor is the privilege against self-incrimination self-executing. Finally, the juvenile did not invoke his rights until after the disposition hearing. *See also Baumann v. United States*, 692 F.2d 565, 576 (9th Cir. 1982) (holding that constitutional precedent does not "require that a convicted defendant be warned of his right to counsel and his right to remain silent prior to submitting to a routine, authorized presentence interview"). Based upon the evidence presented herein, we are unable to ascertain a violation of Miguel's constitutional right against self-incrimination.

¶ 33 On this record, we do not find that the conditions of probation compel a waiver of constitutional rights against self-incrimination or that the juveniles' dispositions were impermissibly enhanced based on incriminating statements. Moreover, the juveniles do not argue that any admission has been used in a *subsequent* adjudication or criminal prosecution. Therefore, we find no infringement of their Fifth Amendment privilege against self-incrimination.

### 3. Equal Protection

¶ 34 Finally, the juveniles argue a violation of equal protection, in that, not all juvenile delinquents and convicted adults are required to participate in Drug Court. They maintain that strict scrutiny is applicable "if the program or disposition imposes a burden upon suspect classifications or impinges upon and limits fundamental rights." We disagree and apply a rational basis test because a fundamental right is not implicated [6] nor is youth a suspect classification. *See In re Brandon H.*, 195 Ariz. 387, 388–89, 988 P.2d 619, 620–21 (App.1999); *Maricopa County Juv. Action No. JV–114428*, 160 Ariz. 90, 91, 770 P.2d 394, 395 (App.1989). Equal protection requires only that reasonable grounds exist for establishing classifications, but that within the class, the individuals are treated equally. *See No. JV–500210*, 177 Ariz. at 5, 864 P.2d at 562. Our state's cases have held that the equal protection clause does not necessarily require that we treat juveniles and adults alike. *Id.* (holding that, unlike adults, juveniles may not reject probation); *Maricopa County Juv. Action No. J–86509*, 124 Ariz. 377, 379, 604 P.2d 641, 643 (1979) (differences between the adult and juvenile justice systems "is not only a reasonable one but one which meets the vital interest of the state in protecting children);" *Maricopa County Juv. Action No. J–81405–S*, 122 Ariz. 252, 255, 594 P.2d 506, 509 (1979) (the statutory and procedural justice system applicable to juveniles is a reasonable classification "and furnishes the basis for the different treatment of the class").

¶ 35 Moreover, juvenile delinquency proceedings differ from adult criminal prosecutions because the state's role as *parens patriae* is to act in the best interests of the juvenile. *See Santosky v. Kramer*, 455 U.S. 745, 766, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). "The aim of the court is to provide individualized justice for children." *Maricopa County Juv. Action No. JV–510312*, 183 Ariz. 116, 118, 901 P.2d 464, 466 (quoting *In re Gault*, 99 Ariz. 181, 188, 407 P.2d 760, 765 (1965), *rev'd on other grounds*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). In furtherance of this goal, the court is empowered by A.R.S. § 8–341(A) (Supp.2002) [7] with

---

6. The juveniles argue that strict scrutiny is the appropriate test because their due process and Fifth Amendment rights are infringed on. However, as discussed in ¶¶ 21–33 above, we find no violation of these constitutional rights.

7. A.R.S. § 8–341(A) reads in part:
   A. After receiving and considering the evidence on the proper disposition of the case, the court may enter judgment as follows:

1. It may award a delinquent juvenile:
   (a) To the care of the juvenile's parents, subject to supervision of a probation department.
   (b) To a probation department, subject to any conditions as the court may impose, including a period of incarceration in a juvenile detention center of not more than one year.

broad powers of disposition after adjudicating a juvenile delinquent.

¶ 36 We reiterate that rehabilitation is the purpose of disposition following an adjudication of delinquency. *No. JV–500210*, 177 Ariz. at 5, 864 P.2d at 562. Permitting the juvenile court to require Drug Court participation as a special term of probation for some but not all juveniles is rationally related to rehabilitation. In both cases before us, the evidence indicates that the juveniles were, in fact, using illicit drugs and both dispositions reflect that evidence. We point out that all juveniles are subject to the imposition of Drug Court, but that individualized consideration prevails. *Cf. State v. Steelman*, 120 Ariz. 301, 313, 585 P.2d 1213, 1225 (1978) ("The basic rule of equal protection in criminal cases is that no person should be *subject* to a greater or different punishment than another in similar circumstances.") (emphasis added); *State v. Maloney*, 105 Ariz. 348, 354, 464 P.2d 793, 799 (1970) ("It is settled law that any *one* penalty does not abridge the rights of a person under the Equal Protection Clause so long as no *one* person is subject to any different or greater punishment than others of the same class.").

¶ 37 The juveniles contend that they should be able to reject a term of probation in the same way that an adult can reject the imposition of probation. In *State v. Montgomery*, 115 Ariz. 583, 566 P.2d 1329 (1977), we stated in dictum that the defendant, who complained about a condition of probation, could choose to be incarcerated instead.[8] We have since theorized that the supreme court's rationale for this statement is "the futility of imposing probation on a person who avows he will not abide by its terms." *No. JV–500210*, 177 Ariz. at 5, 864 P.2d at 562 (referring to *State v. Montgomery*, 115 Ariz. 583, 566 P.2d 1329 (1977)).[9] We opined that what may be futile as to an adult, however, may not be for a child because a juvenile is less likely to be able to "determine what is in

their own best interest." *JV–500210*, 177 Ariz. at 5, 864 P.2d at 562. For that reason, unlike an adult, a juvenile may not reject probation and elect incarceration. *Id.*

¶ 38 Recently, this court decided *State v. Tousignant*, 202 Ariz. 270, 43 P.3d 218 (App. 2002). There, we addressed the issue of whether a defendant who violated his probation under Proposition 200 could opt to reject further probation. *Id.* at 3, 43 P.3d at 218. The *Tousignant* court held that he could not because A.R.S. § 13–901.01(E) (2001) mandates probation, and incarceration is not an option. *Id.* at 4, 43 P.3d at 220; *see also In re Fernando C.*, 195 Ariz. 233, 234, ¶ 5, 986 P.2d 901, 902 (App.1999) (holding that Proposition 200 does not apply to juveniles because its goals are redundant with that of the juvenile court system). In so holding, this court overturned the lower court's decision to simply terminate the defendant's probation as unsuccessful and release him. *Id.* Therefore, just as an adult may not currently reject rehabilitative probation for a first or second-time drug conviction, neither may a juvenile reject a term of probation resulting from a delinquency disposition.

¶ 39 Finally, the juveniles argue that strict scrutiny should be applied to a discriminatory statute but do not specify what statute they are challenging. The constitutionality of a statute is presumed and if a reasonable albeit debatable basis exists, the statute will be upheld absent a clear showing of unconstitutionality. *See Brandon*, 195 Ariz. at 388, 988 P.2d at 620; *see also State v. Ramos*, 133 Ariz. 4, 6, 648 P.2d 119, 121 (1982). However, as the juveniles do not argue that any particular statute is unconstitutional, we need not reach the issue.

## II. CONCLUSION

¶ 40 We find that the juveniles' placement in the Drug Court program as a special term

---

8. *Montgomery* was decided under A.R.S. section 13–1657(A)(1) (Supp.1976) (repealed Oct. 1, 1978), of the former Arizona criminal code. *Montgomery* does not stand for the proposition that a defendant can simply opt out of probation and elect incarceration. *See Demarce v. Willrich*, 203 Ariz. 502, 56 P.3d 76, 80 (App.2002).

9. The juveniles ask that we revisit *JV–500210* as it relates to a probation term that requires involuntary participation in Drug Court. As the purpose behind the juvenile sentencing scheme has not changed since that decision, we decline their request.

of probation did not violate their constitutional rights and bears a reasonable relationship to the purpose of juvenile dispositions, which is rehabilitation. There were no allegations of constitutional violations validated in this record. On the basis of the record presented and the foregoing discussion, the juvenile court judges did not abuse their discretion.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and G. MURRAY SNOW, Judge.