NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE RUBEN P.

No. 1 CA-JV 21-0018
FILED 7-20-2021

Appeal from the Superior Court in Maricopa County
No. JV204923
The Honorable Wendy S. Morton, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Law Offices of Kevin Breger, PLLC, Scottsdale
By Kevin Breger
*Counsel for Appellant Ruben P.*

Maricopa County Attorney's Office, Phoenix
By Faith C. Klepper
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Kent E. Cattani joined.

**T H U M M A**, Judge:

**¶1**		Ruben P. argues the superior court's order committing him to the Arizona Department of Juvenile Corrections (ADJC) was an abuse of discretion. Because Ruben P. has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**		Ruben began having contact with law enforcement in September 2018, just before he turned 14. Over the next 26 months, four police departments and the Maricopa County Sherriff's Office had significant contacts with Ruben. The State filed delinquency petitions accusing Ruben of a dozen felonies and additional misdemeanors. The charges included shoplifting, assault of a teacher, possession of marijuana, possession of a firearm, unlawful discharge of a firearm, unlawful use of means of transportation, theft of means of transportation and burglary.

**¶3**		Given concerns about his failure to appear and his behavior in the community, the court detained Ruben several times. When released on an electronic monitor, he cut off the monitor. Ruben was then on warrant status for more than two months until he was arrested for theft of means of transportation and detained until his disposition. The Juvenile Probation Officer (JPO) indicated Ruben had been involved with a gang, had a history of testing positive for illegal substances and running away, and he had refused to participate in counselling.

**¶4**		The specific charges leading to this appeal resulted in Ruben pleading delinquent to four felonies: (1) possession of a firearm committed in May 2019; (2) solicitation to commit burglary in the third degree committed in October 2019; (3) theft committed in April 2020 and (4) theft committed in November 2020. The disposition hearing for these delinquencies was held in January 2021.

**¶5**		In early December 2020, a psychologist diagnosed Ruben with various disorders (including "moderate to severe" conduct disorder), stating "it would be a mistake to allow Ruben to return to the community at this point," adding he "cannot be trusted with any type of freedom." The psychologist "recommended Ruben be placed in an intensive behavior modification level of group home." At the disposition hearing, the alternatives were (1) committing Ruben to ADJC or (2) placing him on probation at Sycamore Canyon, a residential treatment center.

¶6　　　　Before the disposition hearing, the JPO recommended commitment to ADJC because it was the "best placement for Ruben due to his run[ning away] history and his behaviors in the community." A Juvenile Intensive Probation Supervision supervisor overseeing the case agreed with Ruben's placement at ADJC. At the disposition hearing, the JPO stated that Ruben had been accepted into Sycamore Canyon, but she still recommended commitment to ADJC because Sycamore Canyon was not a secure facility. The State also recommended that Ruben be committed to ADJC. In contrast, Ruben's counsel and his guardian ad litem asked that he be placed at Sycamore Canyon, adding ADJC was a "bit extreme." Ruben was given the opportunity to address the court but declined to do so.

¶7　　　　Having weighed and assessed the information provided about the two possible alternatives, the court committed Ruben to ADJC. In doing so, the court cited his referral history, poor performance on release, the nature of the admitted felony delinquencies and the need for a secure environment. Although this was Ruben's first felony disposition, the court gave him a repeat felony offender warning twice,[1] explaining that commitment to ADJC was a possibility if he committed offenses in the future. Although the first misstatement went uncorrected, the State corrected the court the second time and, as a result, the court correctly gave Ruben his first-time felony juvenile offense warning at the end of the disposition. This court has jurisdiction over Ruben's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Ariz. R.P. Juv. Ct. 103–04 (2021).[2]

## DISCUSSION

¶8　　　　Ruben argues that the court abused its discretion by committing him to ADJC. The superior court has broad discretion to determine the appropriate disposition in a delinquency. *In re Miguel R.*, 204 Ariz. 328, 331 ¶ 3 (App. 2003). This court reviews the disposition for an abuse of discretion, viewing the evidence in the light most favorable to sustaining the superior court's ruling. *Id.*; *In re John M.*, 201 Ariz. 424, 426 ¶ 7 (App. 2001).

---

[1] The court read from Arizona Revised Statutes (A.R.S.) § 8-341(E) instead of A.R.S. § 8-341(C).

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶9 Ruben argues that the court's misstatements in providing him the repeat felony offender warning suggests that it was a factor in committing him to ADJC. A court's misstatement, however, is not an abuse of discretion if it did not affect the court's disposition. For example, in *In re Harry B.*, the superior court made a misstatement about the location of the juvenile's threatening act, which the appellate court found did not result in an abuse of discretion because the misstatement was unimportant to the court's disposition. 193 Ariz. 156, 159 ¶ 10 (App. 1998).

¶10 Although acknowledging the *Harry B.* analysis, Ruben seeks to distinguish it by arguing that the two misstatements about the repeat felony offender warning were important to the court's disposition. This, Ruben asserts, meant the court relied on inaccurate information in committing him to ADJC. But there is no indication that the court relied on the misstatements in determining Ruben's disposition. Instead, the record shows the court corrected the misstatement after the State raised the issue, and the court relied on undisputed facts in making the disposition, specifying Ruben's numerous referrals, poor performance upon release, the nature of the four admitted felony adjudications and need to be placed in a secure environment.

¶11 Relying on *In re Melissa K.*, Ruben further argues the court did not consider relevant commitment guidelines when committing him to ADJC. 197 Ariz. 491, 495 ¶¶ 14, 16 (App. 2000). The court is required to consider factors listed in the commitment guidelines promulgated by the Arizona Supreme Court. *See* A.R.S. § 8-246(C); Ariz. Code of Jud. Admin. § 6-304(C)(1). The guidelines, however, "do not place constraints on the juvenile court's discretion to determine" whether commitment to ADJC is appropriate. *In re Niky R.*, 203 Ariz. 387, 390 ¶ 12 (App. 2002) (citation omitted); *see also State v. Lee*, 189 Ariz. 608, 616 (1997) ("[J]udges 'are presumed to know the law and to apply it in making their decisions.'") (citation omitted).

¶12 As applicable here, the guidelines state that, when considering commitment to ADJC, the court must:

> a. Only commit those juveniles who are adjudicated for a delinquent act and whom the court believes require placement in a secure care facility for the protection of the community;
>
> b. Consider commitment to ADJC as a final opportunity for rehabilitation of the juvenile, as

well as a way of holding the juvenile accountable for a serious delinquent act or acts;

c. Give special consideration to the nature of the offense, the level of risk the juvenile poses to the community, and whether appropriate less restrictive alternatives to commitment exist within the community; and

d. Clearly identify, in the commitment order, the offense or offenses for which the juvenile is being committed and any other relevant factors that the court determines as reasons to consider the juvenile a risk to the community.

Ariz. Code of Jud. Admin. § 6-304(C)(1). As noted, the superior court identified these factors and complied with these guidelines in committing Ruben to ADJC. The court also noted that Ruben had "victimized people in [the] community" and that it did not trust him in the community because of his escalating behavior, eventually leading to the four delinquent felony acts Ruben admitted.

**¶13** In *Melissa K.*, this court found that there was an abuse of discretion in part because the court did not follow the commitment guidelines. 197 Ariz at 495 ¶ 15. *Melissa K.*, however, involved a probation revocation where the juvenile was adjudicated incorrigible for running away from home and then was adjudicated delinquent for misdemeanor shoplifting. *Id.* at 492 ¶¶ 2–3. At the time, the guidelines stated that "[a] nuisance offender" was "presumptively inappropriate for commitment to ADJC." *Id.* at 495 ¶¶ 14–15. Concluding the juvenile was a "nuisance offender," *Melissa K.* vacated commitment to ADJC, which contradicted the guidelines. *Id.* at 495 ¶¶ 15–16. Here, by contrast, commitment of Ruben to ADJC was proper under the guidelines and appropriate based on the facts presented. Unlike *Melissa K.*, there is no argument that Ruben is a "nuisance offender," a phrase no longer used in the guidelines. Instead, he was found delinquent of several serious felony offenses. Nor does application of the guidelines otherwise suggest that commitment was inappropriate for Ruben.

¶14 Ruben also relies on *Melissa K.* to argue the court abused its discretion by not exploring less restrictive alternatives before committing him to ADJC. In *Melissa K.*, the court noted there was "no evidence that the court attempted but failed to find a non-correctional secure drug and behavioral treatment program" for the juvenile. *Id.* at 495 ¶ 16. But unlike *Melissa K.*, there is record evidence that the court was aware of other alternatives and considered them. During the disposition hearing and before his commitment, the court knew that Ruben had been accepted to Sycamore Canyon. Faced with two potential dispositional alternatives -- ADJC or Sycamore Canyon -- the court, in its discretion, decided that a secure facility would be best for Ruben. On this record, Ruben has not shown that was an abuse of the court's discretion.

**CONCLUSION**

¶15 Ruben's commitment to ADJC is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA