**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Robert JONES,**
**Defendant-Appellant.**

No. 82–8597.

United States Court of Appeals,
Eleventh Circuit.

Dec. 19, 1983.

---

Fletcher Farrington, Savannah, Ga., for defendant-appellant.

Joseph D. Newman, Asst. U.S. Atty., Savannah, Ga., Marshall Tamor Golding, Washington, D.C., for plaintiff-appellee.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant was convicted of converting pledged property in violation of 15 U.S.C. § 714m(c). Although originally sentenced to four years imprisonment, with all but an indeterminate six months suspended, and five years probation, appellant was resentenced to a straight four-year term after the district court realized that it had misapprehended certain factual matters, through no fault of appellant. This case presents a single issue: whether the resentencing violated the constitutional guarantee against double jeopardy. Concluding that it did, we reverse.

## I.

John Robert Jones was a farmer in Candler County, Georgia. Drought conditions in Georgia caused disastrous crop yields in 1977, 1978 and 1979. Finding himself in narrow financial straits, in 1979 Jones turned to the federal government for relief. Under one federal loan program, farmers may pledge their future crop yield as collateral for operating capital. Jones took advantage of the program, pledging his soybean crop. In 1980, the Commodity Credit Corporation granted Jones permission to sell his 1979 soybean crop on the condition that the crop receipts be used to repay the loan. Instead Jones used the proceeds to finance the 1980 planting. Due to another poor crop yield he was unable to repay the loan, and this prosecution ensued. Though still in need of funds following the 1981 crop year, Jones was unable to obtain financing from the government or his bank. He therefore incorporated his farm and placed all of the shares in his wife's name. She in turn pledged the shares for a bank loan to finance the 1982 planting.[1]

Jones agreed to plead guilty to the charge against him and cooperated fully with investigating authorities, detailing all aspects of the crop transactions. In return, the government agreed that it would bring Jones' cooperation to the court's attention and make no recommendation at sentencing. After Jones' plea was accepted, the Probation Office conducted a full investigation of Jones' affairs. In the course of this investigation, Jones divulged the details of the farm incorporation. This information evidently was never included in the presentence report, nor was it otherwise transmitted to the district judge.

On August 26, 1982, Jones appeared for sentencing. At that time, the Probation Office recommended a straight sentence of four years imprisonment. The district court, however, imposed a fine of $10,000.00 and a split sentence of four years imprisonment with all but six months suspended, and five years probation. The six months was not to be served immediately; for the interim suspended portion of the sentence, the court imposed a number of additional conditions: (1) that Jones continue with an alcohol abuse program and report to any physician specified by his Probation Officer, (2) that he consent to the appointment of a receiver to administer and sell his property, including crops, and (3) that he make restitution to the government. Because Jones could not assist with the soybean harvest from prison, the sentence was to commence with the suspended portion, and the six months incarceration was to be served at a later date.

The district judge explained his reasons for the sentence imposed. He felt that Jones had a poor background: he had shown constant disregard for society's rules and had been afflicted with alcoholism. Consequently, the court's primary concern in sentencing was not rehabilitation; rather, the court sought to strike the correct balance between the government's interest in recouping its "enormous" loss and the necessity of making an example of Jones for other farmers. After learning that the government had no means of harvesting Jones' crop, the court decided upon the split sentence.[2]

---

1. Because Jones pled guilty, the details of these transactions are not fully disclosed in the record.

2. Our resolution of this case turns in part on the facts as they evolved at the first sentencing. Consequently, we quote at length from that proceeding:

   THE COURT: Your sentence is probably going to involve more details and things of a more technical nature than any one I have ever imposed. And I will tell you now at the outset of what will be a rather lengthy and difficult program for you if there is any varia-

tion from the responsibility that I am going to impose upon you you may rest assured that the mandate of the Court's sentence and judgment *that I am going to enter today* will be very strictly applied and very well enforced.

With respect to your sentence, it is adjudged, Mr. Jones, that you will be committed to the custody of the Attorney General of the United States or his authorized representative for the purpose of imprisonment for a term of four years. Provided, however, that you will serve six months of that sentence of imprisonment in a jail-type institution or a federal

Later that week the district court realized that it had concluded erroneously that Jones could make restitution with relative ease. Now aware that the bank was holding a lien on the soybean crop, Mrs. Jones having pledged her shares for a loan, the court concluded that there was "not a realistic possibility for the very near future" that Jones' finances would be unraveled sufficiently to permit restitution. Accordingly, the court held another hearing on September 9, 1982, and resentenced Jones to a straight four-year term. At that time, the court made it clear that the mistake of fact resulted from its own error.

The district judge stated several times · that on August 26th it had "imposed" sentence. He further noted that Jones had reported to the Marshal and "perhaps reported to the Probation Officer. . . ." He stated, however, that it was his understanding that he was free to resentence so long as Jones had not yet begun to serve the original sentence. Although he had reported to the Marshal and Probation Officer, "Jones has not begun to serve any sentence until I order him to report [for incarceration], which I have not yet done." The court concluded:

> I note that the judgment and commitment order which I had prepared has not been signed and purposely so and I am inclined at this time, notwithstanding the objections previously noted, to impose another entirely different sentence on Mr. Jones and in his case.

Tr. 4:27. Whereupon, Jones was sentenced to four years incarceration.

## II.

The government offers two main arguments on appeal. First, it asserts that a sentence is not final, and therefore may be enhanced, at any time prior to the trial judge's signing the sentencing order. Second, the government cites *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), as support for the proposition that the Double Jeopardy Clause has no application to the revision of a sentence.

Appellant asserts that the relevant question is not whether the sentence is final, as determined by affixing a signature to a commitment order, but whether the defendant has begun to serve the sentence. According to appellant, once service of the sentence commences, the Double Jeopardy Clause bars the district court from recalling the defendant and enhancing his sentence. Appellant maintains that he had begun to serve his sentence by reporting to the Marshal and Probation Officer and by following the numerous conditions set out by the district court.

The district court's assertion to the contrary notwithstanding, we agree that at the time of the resentencing, Jones had begun to serve his sentence. We base our conclusion on the language used by the district court at the two sentencing proceedings as well as the concessions made by the government at oral argument.

---

correctional facility. The balance of the term of imprisonment will be suspended and you will be placed on probation for a period of five years. You will enter the institution in which you will serve the six months of incarcerated time on a date certain, *which I will, after consultation with your lawyer, the .probation officer, and criminal investigator in this case, set within thirty days from this date.* I will let you know in another written order of the time at which you must report to an institution and to which institution you must report.

----

[other conditions of the sentence set out] All right, sir, I will ask you if you will reiterate those terms to Mr. Jones and I will ask you if you will confer with me in a three-par-

ty telephone call, if you will, with Mr. Newman within the next three weeks so the three of us can discuss this reporting date and see how things are going.

Mr. Newman, I charge you, as a representative of the United States of America with the responsibility of seeking the appointment of such a receiver as I have described in this sentence.

Mr. Jones, do I have your assurance if I do not incarcerate you today that you will remain within the Southern District of Georgia until such time as I order your incarceration and that you will report to the place that I order for your incarceration?

MR. JONES: Yes, sir.

Tr. 3:27–28, 33. (emphasis added).

The transcript of the August 26th proceeding is replete with language indicating that except for the date of commitment, which remained to be set, the conditions of the sentence were effective immediately. See, e.g., Tr. 3:27 ("the mandate of the court's sentence and judgment that I am going to enter today will be very strictly applied and very well enforced"); Tr. 3:28 (court will inform Jones "in another written order" of date for reporting to prison); Tr. 3:33 (court will confer with counsel within three weeks to set reporting date "and see how things are going"); Tr. 3:33 (court requests Jones' assurance that if not incarcerated immediately Jones will remain in jurisdiction and report for incarceration when ordered). The order scheduling the September 9th proceeding states that matters came to the attention of the court "[s]ubsequent to imposition of sentence," and therefore "resentencing" was necessary. Order of September 3, 1982. Furthermore, at the September 9th proceeding the district court referred several times to the sentence initially "imposed." See, e.g., Tr. 4:2 ("[t]he sentence imposed from the bench last week"); Tr. 4:15 ("original orally stated sentence"). Finally, government counsel, while arguing that sentence was not final until written and signed, conceded at oral argument that Jones was not free to violate the conditions of the sentence in the period between August 26th and September 9th.

Based on the record and arguments, we have no doubt that after the sentencing on August 26th, Jones was subject to the restraining conditions of, and was serving, his sentence. In light of the reality of the situation, we reject the government's argument that the sentence was not "final" until signed, at least insofar as "finality" may relate to our determination under the Double Jeopardy Clause. That, however, is the beginning, not the end, of our analysis.

### III.

Our inquiry continues with United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426,

66 L.Ed.2d 328 (1980), the Supreme Court's pronouncement on double jeopardy rights as they pertain to sentencing. In DiFrancesco, the defendant was convicted under the federal racketeering laws and sentenced as a dangerous special offender to two ten-year prison terms to be served concurrently with each other and concurrently with a nine-year sentence imposed in unrelated federal proceedings. In other words, the district court imposed the equivalent of only one additional year's incarceration under the dangerous special offender statute. The government appealed the sentence on the ground that the district court abused its discretion by imposing only one additional year. Believing it could not enhance a sentence on an appeal by the government, the court of appeals dismissed the appeal on double jeopardy grounds. The Supreme Court granted certiorari and reversed.

Although the Court in DiFrancesco addressed a different issue from the precise issue now before us,[3] it enumerated governing principles that guide our resolution of this case. First, the Court observed that "the pronouncement of sentence has never carried the finality that attaches to an acquittal." 101 S.Ct. at 435. Specifically referring to parole, the Court explained, "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." Id. at 437. Of particular importance to Jones' appeal is the Court's statement that "the established practice in the federal courts [is] that the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence." Id. at 436.

This case falls squarely within the conditional parenthetical. We know from DiFrancesco that the sentencing court may

**3.** DiFrancesco addressed the question whether the defendant's double jeopardy rights were threatened where the government, pursuant to a congressional enactment, appealed an imposed sentence seeking enhancement.

enhance a defendant's sentence "*at least* ... so long as he has not yet begun to serve that sentence." *Id.* (emphasis supplied). Here we find that Jones had begun to serve his sentence. The Supreme Court, however, "venture[d] no comment as to this [pre-service] limitation." *Id.* Under *DiFrancesco*, then, the district judge may or may not be able, within the strictures of the Double Jeopardy Clause, to enhance sentence once service has begun.[4] In order to resolve this issue, we return to *DiFrancesco* for further guidance.

█ We are able to draw two lessons from that opinion. First, the Double Jeopardy Clause bars multiple punishment, *i.e.*, punishment in excess of that permitted by law. *Id.* at 438. Second, the Double Jeopardy Clause respects the defendant's "legitimate expectations" as to the length of his sentence. *Id.* at 437.

The first principle is derived from the *DiFrancesco* Court's discussion of *Ex parte Lange*, 18 Wall 163, 21 L.Ed. 872 (1874). In *Lange*, the defendant was convicted of "appropriating to his own use mail bags," a violation of federal law punishable by "imprisonment for not more than one year *or a* fine of not less than $10.00 nor more than $200.00." *Id.* at 164 (emphasis in original). *Lange* was sentenced on November 3, 1873, to both one year in prison *and* a $200.00 fine. The fine was paid on the following date. On November 8, 1873, the defendant appeared again before the judge on a writ of habeas corpus. The prior sentence was vacated and a sentence of one year's imprisonment from that date was imposed. *Id.* The *Lange* Court reversed on the ground that the Double Jeopardy Clause prohibited

what would be in effect double punishment. The issue was addressed rhetorically:

> The petitioner, then, having paid into court the fine imposed upon him of $200.00, and that money having passed into the Treasury of the United States, and beyond the legal control of the court, or of anyone else but the Congress of the United States, and he having also undergone five days of the one year's imprisonment, all under a valid judgment, can the court vacate that judgment entirely, and without reference to what has been done under it, impose another punishment on the prisoner on that same verdict? To do so is to punish him *twice* for the same offence. He is not only put in jeopardy twice, but put to actual punishment twice for the same thing.

*Id.* at 175 (emphasis in original).

In *United States v. Benz*, 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931), the Supreme Court intimated, *in dictum*, that the rule of *Lange* was that, once service begins, the sentencing judge cannot enhance a sentence. In *DiFrancesco*, however, the Court laid all speculation to rest, stating:

> But the dictum's source, *Ex parte Lange*, states no such principle.... No double jeopardy problem would have been presented in *Ex parte Lange* if Congress had provided that the offense there was punishable by both fine and imprisonment, even though that is multiple punishment."

101 S.Ct. at 438. *Lange*, therefore, enunciated a rule no broader than that "a defendant may not receive a greater sentence than the legislature has authorized." *Id.* *See also Missouri v. Hunter*, —— U.S. ——, 103

---

4. Prior to *DiFrancesco*, several circuits adhered to the rule that a defendant could not be resentenced after he had begun to serve his sentence. *See, e.g., United States v. Bynoe*, 562 F.2d 126 (1st Cir.1977); *United States v. DiLorenzo*, 429 F.2d 216, 221 (2d Cir.1970), *cert. denied*, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971); *Vincent v. United States*, 337 F.2d 891, 894 (8th Cir.1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1965); *United States v. Rosenstreich*, 204 F.2d 321 (2d Cir.1953). █ The *DiFrancesco* Court refers to some of these cases, stating that this is "the established practice in the federal courts...." *Bynoe*, however, is based not upon any "practice" but upon the Double Jeopardy Clause. Although the *DiFrancesco* Court ventured no opinion as to this "practice," we question the vitality of the *Bynoe* rule under the Double Jeopardy Clause subsequent to *DiFrancesco*. Jones makes no claim before us under any other clause of the Constitution, or under our supervisory powers.

S.Ct. 673, 74 L.Ed.2d 535 (1983) (with respect to cumulative sentences imposed in single trial, Double Jeopardy Clause does no more than prevent sentencing court from prescribing greater punishment than legislature intended).

The second principle, that the "legitimate expectations" of the defendant are protected by the Double Jeopardy Clause, also is rooted in *DiFrancesco*. The relevance of the defendant's expectations stems from one of the purposes of the Double Jeopardy Clause—to avoid repeatedly subjecting the defendant to "embarrassment, expense, anxiety, and insecurity in the possibility that he may be found guilty even though innocent." 101 S.Ct. at 437. Although these factors are of less concern in sentencing, after the defendant already has been found guilty, they were nonetheless central to the *DiFrancesco* decision. There the Court concluded that because a sentence under the dangerous special offender statute is explicitly subject to increase on appeal, DiFrancesco's "legitimate expectations" were no greater than "the expectations of the defendant who is placed on parole or probation that later is revoked." *Id.* We presume, therefore, that if the legitimate expectations of a defendant in Jones' position are frustrated by resentencing, double jeopardy rights would be implicated.

### IV.

■ While resentencing posed no danger of multiple punishment in this case,[5] we conclude that Jones' legitimate expectations with respect to the duration of his sentence were frustrated by resentencing. Hence we hold that the enhancement of Jones' sentence violated his rights under the Double Jeopardy Clause.

We note initially that both before and after his guilty plea was accepted, Jones cooperated with the authorities, fully disclosing the various transactions relating to his soybean crops, including the incorporation of his farm. At no point in the sentencing process did he engage in deception, for he neither affirmatively misrepresented his affairs nor deliberately withheld pertinent information. At the second sentencing proceeding, the district court stressed that neither Jones nor his counsel were responsible for the court's mistaken impression as to the likelihood of restitution. The court declared:

> I think it is appropriate to state at this time that a mistake of fact existed in the mind of the District Judge at the time this sentence was imposed. I was mistaken about the nature and extent of the financial transactions. *This was of course not Mr. Jones' fault.* That had been made known to a member of this court's staff, Mr. Williams, the Probation Officer.... I will state again in the record that there is absolutely nothing in these conditions, absolutely nothing in the record, and no fact or inference that I know of that counsel for Mr. Jones has in any way misled the Court. The mistakes of fact which precipitated this new sentence, as it were, are entirely generated from this side of the bench.

Tr. 4:26–28 (emphasis added).

For the purpose of determining the legitimacy of a defendant's expectations, we draw a distinction between one who intentionally deceives the sentencing authority or thwarts the sentencing process and one who is forthright in every respect. Whereas the former will have purposely created any error on the sentencer's part and thus can have no *legitimate* expectation regarding the sentence thereby procured, the latter, being blameless, may *legitimately* expect that the sentence, once imposed and commenced, will not later be enhanced. Under this analysis, unless the statute explicitly provides for sentence modification, as in *DiFrancesco,* or the defendant know-

---

**5.** Jones was convicted of violating 15 U.S.C. § 714m(c). The maximum statutory punishment for this offense is a fine of $10,000.00 or imprisonment for five years, or both. Jones served fourteen days of a conditional suspend- ed sentence and then was resentenced to a straight four-year prison term. As Jones' entire sentence does not exceed that permitted by Congress, there is no multiple punishment violating the Double Jeopardy Clause.

ingly engages in deception, a sentence may not be altered in a manner prejudicial to the defendant after he has started serving the sentence.[6]

One might argue that although Jones was perfectly candid when dealing with the investigative authorities and the Probation Office, he was, or should have been, aware that the judge was under a mistaken impression at the original sentencing hearing, and hence Jones' expectations with respect to the sentence imposed were not legitimate. We, however, are disinclined to adopt an analysis requiring us to explore the subjective understanding of the particular defendant, or the reasonable understanding of a hypothetical defendant, under a given set of circumstances. In our judgment, the rule set forth above would more fairly and accurately isolate those cases in which the defendants' expectations are legitimate.[7]

Moreover, an examination of the facts presented in this case suggests that a reasonable person in Jones' position would not have been aware of the district court's error when initially sentenced. At the August 26th sentencing, the court emphasized the government's interest in recoupment and noted that Jones' availability for harvesting would be essential to any recoupment. The judge's comments, however, did not reveal that he was ignorant of the incorporation of the farm and the loan from the bank, for had he been aware of these matters, the judge might still have imposed the same

sentence rather than foreclosing *all* possibility of restitution by requiring immediate incarceration. Thus, even though Jones may have been aware of the difficulties which the government would face in recouping the loss, we cannot assume that Jones knew that the trial judge had not appreciated the extent of those difficulties and would have imposed a harsher sentence if he had. Analyzing the specific situation at the time of sentencing, we again conclude that Jones' expectations as to the initial sentence were legitimate and that resentencing violated his double jeopardy rights.

## V.

For the foregoing reasons, we reverse the judgment of the district court altering Jones' sentence and remand for proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

**6.** We need not decide whether this rule applies where the defendant *unintentionally* misrepresents his affairs or withholds pertinent information in the sentencing process, and we express no opinion on the issue.

**7.** Even more than the assessment of the legitimacy of privacy expectations for Fourth Amendment purposes or the assessment of the voluntariness of confessions for Fifth Amendment purposes, the question whether the defendant's expectations regarding his sentence are legitimate defies an individualized examination on appeal. First, because there is practically no opportunity for an evidentiary hearing before the trial court on the issue, it is unlikely that the pertinent facts will have been sufficiently developed to permit the appellate court to conduct a case-by-case inquiry, whether sub-

jective or objective. Second, given the broad discretion of a sentencing judge, the multitude of factors which may be taken into account in sentencing, and the difficulty of parsing the sometimes impenetrable comments of a trial judge at sentencing, it is doubtful whether the appellate court could, even under ideal circumstances, determine that the defendant's expectations were illegitimate. Indeed, any inquiry rests on the debatable assumption that the defendant listened, or a reasonable defendant would have listened, to the sentencing judge's comments in the first place. For these reasons, a particularized approach, as opposed to the application of the general rule propounded here, would be fraught with unnecessary speculation.