[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14897

_____

D.C. Docket No. 1:12-cr-20161-MGC-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOAQUIN AMADOR SERRAPIO, JR.
a.k.a. Jay Valor,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 18, 2014)

Before MARTIN and JORDAN, Circuit Judges, and BAYLSON,[*] District Judge:

JORDAN, Circuit Judge:

Like others before him, Joaquin Serrapio, Jr. learned the hard way that

whatever one says to a reporter may later appear in print.  After being sentenced to

_____
[*] Honorable Michael M. Baylson, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

three years of probation (with a number of conditions, including four months of home confinement with electronic monitoring and 250 hours of community service) for threatening to shoot President Barack Obama during his 2012 visit to the University of Miami, Mr. Serrapio spoke to a reporter for his college newspaper. Among other things, he told the reporter that his ordeal had been "pretty funny," that he could not be imprisoned in his "own house," and that a lot of good had come out of his case, including for his rock band, as a "lot people showed up [to one of his shows] to see the kid who threatened to kill the [P]resident."

The district court, upon learning of these comments, apparently took to heart Justice Frankfurter's observation that "probation grew out of a realization that to make the punishment fit the criminal requires wisdom seldom available immediately after conviction." *Roberts v. United States*, 320 U.S. 264, 273 (1943) (Frankfurter, J., dissenting). Although it did not revoke Mr. Serrapio's three-year term of probation, the district court modified the conditions of probation to include 45 days in a halfway house and one year of home confinement with electronic monitoring.

In this appeal, Mr. Serrapio asks us to hold that these modifications violated his rights under the Double Jeopardy Clause of the Fifth Amendment, the Due Process Clause of the Fifth Amendment, and the First Amendment. With the

2

benefit of oral argument, we conclude that, on this record, the district court's actions were constitutionally permissible.

## I

In February of 2012, Mr. Serrapio posted two messages on Facebook threatening to shoot President Obama during his then-upcoming visit to the University of Miami. One of the messages—the one that formed the basis for his guilty plea to violating 18 U.S.C. § 871—was as follows: "If anybody is going to UM . . . to see Obama today, get your phones out and record because at any moment, I'm going to put a bullet through his head and you don't want to miss that. Youtube."

The district court sentenced Mr. Serrapio on August 22, 2012, to three years of probation with certain conditions, including four months of home confinement with electronic monitoring and 250 hours of community service. The district court also imposed a mandatory assessment of $100. No one appealed the district court's sentence.

## A

On September 11, 2012, Miami-Dade College's newspaper, *The Reporter*, published an article by Karla Barrios entitled "Serrapio Calls Facebook Obama Threat 'Funny.'" The article quoted Mr. Serrapio as saying that he thought the ordeal was humorous, that it was "pretty funny to me and my friends," and that he

3

could not be imprisoned "in my own house."   Mr. Serrapio, who was a member of a rock band, was also quoted as saying that a "lot of good has come out of this, even for my music.  The same week I got out of jail, which was February 27, I had a show that Saturday and a lot of people showed up to see the kid who threatened to kill the [P]resident."  Ms. Barrios' article noted that Mr. Serrapio had taken a more remorseful tone in an article he had written for the same newspaper.

The article Mr. Serrapio wrote for *The Reporter* was entitled "The Biggest Mistake of My Life," and was published next to and on the same day as the article written by Ms. Barrios.  In his own article, Mr. Serrapio said that he had posted the Facebook threats with the intent of being sarcastic, but the Secret Service believed he might be serious, and the threats had led to his criminal conviction.  He explained that he spent several days in custody, that he had to undergo a mental health evaluation and a polygraph test, and that he faced a sentence of five years in prison.  Luckily, he said, the district court had been fair in sentencing him.  He said that he was now a convicted felon at the age of 21, and that it had been a "difficult journey."  He hoped that "young people understand words are not just words anymore," and that "they should not use social media to post negative comments, threatening words, or compromising pictures," for "posts are available for the world to see and your words and/or your pictures will follow you for the rest of your life."

**B**

The very next day, September 12, 2012, the district court issued a notice setting a hearing on September 18, 2012. The notice indicated only that the hearing concerned a status conference relating to a modification of probation. *See generally* Fed. R. Crim. P. 32.1(c)(1) ("Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation.").

When the parties appeared as scheduled, the district court said that it had set the hearing because it was "certain" that Mr. Serrapio did not understand what probation meant. The district court explained that it was concerned about the interview that Mr. Serrapio had given to *The Reporter*, though it had determined that he had not violated the conditions of his probation, and clarified that the hearing was not for a revocation of probation.

Mr. Serrapio, on his own and through his attorney, addressed the district court's concerns, explaining that he indeed took his offense and sentence seriously and that his quoted statements were taken out of context. Mr. Serrapio explained that Ms. Barrios, a reporter from *The Reporter*, contacted him by phone and asked him several questions. Mr. Serrapio answered the questions, not knowing they would eventually be quoted in the article. Mr. Serrapio's attorney pointed to the

5

"Biggest Mistake of My Life" article as evidence of his client's understanding of the seriousness of the situation.

Mr. Serrapio's attorney also said that he had attempted to speak with Ms. Barrios and Manolo Barco, the newspaper's faculty adviser, prior to the hearing, but had not been able to do so. Mr. Barco returned his call, but declined to comment. Neither Ms. Barrios nor Mr. Barco were subpoenaed, and as a result neither one was present at the hearing.

After Mr. Serrapio had engaged in a colloquy with the district court, his attorney made several legal arguments in opposition to any modification of the probationary sentence. First, he argued that, because Mr. Serrapio had already begun serving his term of probation (including the home confinement portion) and had paid the $100 assessment, any modification of the sentence would constitute double jeopardy absent a revocation of probation. Second, he asserted that if the district court modified the sentence, it would be punishing Mr. Serrapio for the exercise of his free speech rights.

The district court was not persuaded by the assurances and answers of Mr. Serrapio or the arguments of his attorney. After stating that it had the authority to modify the conditions of probation pursuant to 18 U.S.C. § 3563(c), the district court told Mr. Serrapio it was "time that [he] understand that there [are] consequences for [his] actions, and [that] this is serious[.]" It then modified the

6

conditions to include 45 days in a halfway house and one year of home confinement with electronic monitoring, with that one-year period to begin upon Mr. Serrapio's release from the halfway house. The district court allowed Mr. Serrapio to continue attending school, and placed him on curfew from 10 p.m. to 6 a.m. The district court did not increase the three-year term of probation that it had initially imposed.

## II

Mr. Serrapio did not seek or obtain a stay of the district court's modification of the conditions of his probation, and has by now completed those modified conditions; he has served the 45-day term in the halfway house and the one year of home confinement with electronic monitoring. A logical question, therefore, is whether this appeal is moot. We conclude that it is as to the 45-day halfway house term but not as to the one year of home confinement with electronic monitoring.

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees Int'l*, 567 U.S. ___, 132 S. Ct. 2277, 2287 (2012) (internal quotation marks omitted). "[W]hen a defendant challenges only an expired sentence, [there is] no . . . presumption [that collateral consequences exist], and the defendant must bear the burden of identifying some ongoing 'collateral consequence' that is 'traceable' to the challenged portion of the sentence and 'likely to be redressed by a favorable

judicial decision.'" *United States v. Juvenile Male*, __ U.S. __, 131 S. Ct. 2860, 2864 (2011) (citation and italics omitted). Mr. Serrapio's sentence is not completely expired, as his three-year term of probation does not end until August of 2015. Nevertheless, the Supreme Court's decision in *Juvenile Male* is instructive because Mr. Serrapio is challenging only the completed conditions of his probation, and not the length of his ongoing probationary term.

As to the 45-day halfway house term, we hold that the appeal is moot. Mr. Serrapio finished serving that term some time ago, and it is "impossible for [us] to grant [him] any effectual relief." *Chafin v. Chafin*, __ U.S. __, 133 S. Ct. 1017, 1023 (2013). *See Wade v. Carsley*, 433 F.2d 68, 70 (5th Cir. 1970) (habeas corpus challenge to additional term of imprisonment imposed for inability to pay fine was moot because petitioner served additional term before she sought habeas relief: "We obviously cannot turn back the clock. Neither can we find any collateral consequences that arise here from a fully-served sentence for inability to pay a fine.").[1]

We reach a different result as to the one-year period of home confinement with electronic monitoring. Although Mr. Serrapio has completed the one year of home confinement, he suffered collateral consequences as a result of that

---

[1] As a decision of the former Fifth Circuit rendered prior to October 1, 1981, *Wade* is binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

modification.  The district court ordered Mr. Serrapio to pay the costs of electronic monitoring for the additional eight months of home confinement, and after Mr. Serrapio appealed, the district court denied his motion to waive or reduce the costs of electronic monitoring.    In other words, Mr. Serrapio incurred a financial expense due to the district court's modification of the home confinement condition of probation, and that means the appeal is not moot.  Should Mr. Serrapio prevail on appeal, it is at least theoretically possible that we could grant him relief in the form of a refund of the costs paid for the additional eight months of electronic monitoring.  *See In re Stewart*, 571 F.2d 958, 967 (5th Cir. 1978) (reversing criminal contempt adjudication based on numerous errors and remanding with directions "that the clerk [of court] be ordered to repay [the defendant] the fine that he paid").  And even if we ultimately lacked the authority to order such a refund, that would not render this portion of the appeal moot, for the legal availability of relief goes to the merits, and not to mootness.  *See Chafin*, 133 S. Ct. at 1024 (explaining that the argument that a court lacks the authority to order a certain type of relief "confuses mootness with the merits").

Given our ruling on mootness, the merits discussion that follows concerns only the district court's modification of the conditions of Mr. Serrapio's probation to require one year of home confinement with electronic monitoring.  We do not address the 45-day halfway house term.

### III

The district court had the statutory authority to modify the conditions of Mr. Serrapio's probation several weeks after first imposing sentence. After all, 18 U.S.C. § 3563(c) provides that a district court may "modify, reduce, or enlarge the conditions of the sentence of probation at any time prior to the expiration or termination of the term of probation." *See generally Roberts v. United States*, 320 U.S. 264, 265 (1943) ("If the authority exists in federal courts to suspend or to increase a sentence fixed by a valid judgment, it must be derived from the Probation Act.").

Normally, the modification of a condition of probation under § 3563(c) is reviewed for abuse of discretion. *See United States v. Grant*, 715 F.3d 552, 556-57 (4th Cir. 2013). *See also Burns v. United States*, 287 U.S. 216, 220-21 (1932) (holding that, under statute providing that court "may revoke or modify any condition of probation," sentencing court had "broad discretion" in determining whether revocation or modification would serve "the ends of justice and the best interests of both the public and the defendant"). Mr. Serrapio, however, does not assert that the district court abused its discretion by unreasonably increasing the period of home confinement as a result of his post-sentencing comments. Instead, he contends that this modification violated the Double Jeopardy Clause of the Fifth Amendment, which provides that no person shall "be subject for the same offence

10

to be twice put in jeopardy of life or limb." As to that constitutional claim, we exercise plenary review, *see United States v. Thurston*, 362 F.3d 1319, 1322 (11th Cir. 2004), and reject Mr. Serrapio's challenge.

## A

Significantly, the "Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment. The Clause protects only against the imposition of multiple criminal punishments for the same offense, and then only when such occurs in successive proceedings[.]" *Hudson v. United States*, 522 U.S. 93, 98-99 (1997) (citations, internal quotation marks, and italics omitted). *See also Ex parte Lange*, 85 U.S. 163, 173 (1873) ("we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it").

Had Mr. Serrapio violated the terms of his probation, the increased term of home confinement, or even the imposition of a term of imprisonment based on the violation, would not have offended the Double Jeopardy Clause. As the Supreme Court has noted, "the imposition of confinement when an offender violates his term of probation has never been considered to raise a serious double jeopardy problem." *Ralston v. Robinson*, 454 U.S. 201, 220 n.14 (1981) (explaining that there is no multiple punishment in that scenario because the offender "has, by his

11

own actions, triggered the condition that permits appropriate modification of the terms of confinement"). *See also United States v. Woods*, 127 F.3d 990, 992 (11th Cir. 1997) ("The punishment imposed in the form of probation revocation . . . was part of [the defendant's] original sentence and thus constituted punishment for the crime underlying that sentence."). Although Mr. Serrapio did not violate the terms of his probation, his comments to Ms. Barrios formed the basis for the modification of the terms of his probation, and § 3563(c) permits modification where a defendant's post-sentencing conduct shows that the original conditions were not sufficient to accomplish the purposes of probation. Insofar as the Double Jeopardy Clause is concerned, we do not believe that a formal revocation of probation is a necessary prerequisite to the modification of the conditions of probation.

B

Three decades ago, we explained that the Supreme Court's decision in *United States v. DiFrancesco*, 449 U.S. 117, 132-33 (1980) (holding that the Double Jeopardy Clause is not always a bar to a government appeal of a sentence), stands for two propositions. "First, the Double Jeopardy Clause bars multiple punishment, i.e., punishment in excess of that permitted by law. Second, the Double Jeopardy Clause respects a defendant's 'legitimate expectations' as to the length of his sentence." *United States v. Jones*, 722 F.2d 632, 637 (11th Cir. 1983)

12

(citations omitted).  Applying the second of those propositions, we ruled in *Jones* that a district court violated the Double Jeopardy Clause when it resentenced a defendant (from a four-year sentence, with all but six months suspended, plus five years of probation, to a four-year term of imprisonment) upon realizing that it had made a factual mistake concerning the defendant's ability to pay restitution.  As we saw it, the defendant's "legitimate expectations" with respect to the "duration of [the] sentence were frustrated by resentencing," and as a result the new four-year term of imprisonment violated [the defendant's] rights under the Double Jeopardy Clause." *Id.* at 638.

Mr. Serrapio relies on *Jones*, but that decision does not ultimately help him. Factually, this is not a case like *Jones*, or like *United States v. Fogel*, 829 F.2d 77, 79-80, 88-90 (D.C. Cir. 1987), where the district court—without any factual basis —violated the Double Jeopardy Clause by resentencing a defendant from a term of one year of probation with house arrest to a term of three to nine years' imprisonment, with execution suspended, and three years of probation with twelve months of home confinement.  The district court here did not increase the three-year probationary term it had initially imposed on Mr. Serrapio; it modified the conditions of probation within that term by increasing, from four months to one year, the period of home confinement with electronic monitoring.  Although this modification undoubtedly constituted an additional restriction on Mr. Serrapio's

13

liberty, it did not violate the Double Jeopardy Clause because it did not upset any legitimate expectations held by Mr. Serrapio as to the finality of the conditions of probation, as it was authorized by statute and was based on Mr. Serrapio's post-sentencing conduct. *Cf. Fogel*, 829 F.2d at 89 ("The increase in the original sentence is also not predicated on any action taken by the appellant. . . . [T]he [a]ppellant had no reason to believe that the district court could, on its own motion and without explanation, increase the length of his sentence.").

As we said in *Jones*, once a defendant has started serving a sentence, that sentence may not be "altered in a manner prejudicial" to him "unless the statute [in question] explicitly provides for sentence modification, as in *DiFrancesco*, or the defendant knowingly engages in deception[.]" 722 F.2d at 638-39. Here, as we have noted, a federal statute, 18 U.S.C. § 3563(c), expressly permitted the modification of the conditions of probation at "any time" prior to the expiration of the probationary term, and the district court concluded that Mr. Serrapio's post-sentencing comments about his offense and his sentence warranted modification. Moreover, given the language of § 3563(c), Mr. Serrapio did not have a "legitimate expectation" that his conditions of probation would remain the same for the entire three-year term, even if he did something to warrant modification. *See Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("Because the substantive power to proscribe crimes and determine punishments is vested with the legislature, the question

14

under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.") (citations omitted); *United States v. Husein*, 478 F.3d 318, 338 (6th Cir. 2007) ("The relevant question is 'whether the additional sentence upsets the defendant's legitimate expectation of finality in the original sentence.' . . . 'A defendant has a legitimate expectation in the finality of a sentence unless he is or should be aware at sentencing that the sentence may permissibly be increased.'") (some internal quotation marks, citations, and italics omitted). *Cf. DiFrancesco*, 449 U.S. at 132 (rejecting argument that a "criminal sentence, once pronounced, is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal").

We have not been able to locate any federal cases directly on point, but the few similar ones that exist are consistent with our analysis and holding. These include *United States v. Sines*, 303 F.3d 793, 801 (7th Cir. 2002) (affirming, against a double jeopardy challenge, a district court's subsequent imposition of a new condition of supervised release (a prohibition on contact with a certain person) without having revoked the defendant's term of supervised release); *Huschak v. Gray*, 642 F. Supp. 2d 1268, 1276-78 (D. Kan. 2009) (rejecting argument that Air Force's subsequent modification of sentence, which placed military prisoner on mandatory supervised release, constituted multiple punishment in violation of the Double Jeopardy Clause); and *Coulter v. Corbett*, No. 10-965, 2011 WL 5878352,

15

\*1 (W.D. Pa. Nov. 23, 2011) (denying federal habeas corpus relief to a state prisoner who challenged, on double jeopardy grounds, the state trial court's post-sentencing addition of several conditions to his term of probation).[2]

## C

To the extent that Mr. Serrapio challenges the constitutionality of § 3563(c) as applied on the theory that it "defeat[s] the finality of all probation[ary] sentences" and "contravenes [the] core protections" of the Double Jeopardy Clause, we are not persuaded by his argument. We recognize that one of the "interests protected by constitutional finality is that of the defendant to be free from being compelled to 'live in a continuing state of anxiety and insecurity,'" *Fogel*, 829 F.2d at 88 (citation omitted), and we do not hold or suggest that § 3563(c) gives a district court unfettered authority to do anything it wishes, at any time, with respect to any condition of a probationary sentence. *See United States v. Cochran*, 883 F.2d 1012, 1017 (11th Cir. 1989) ("The Constitution protects this

---

[2] The state courts, in contrast, appear to be somewhat divided on the question we address today. Some hold that, absent revocation, the Double Jeopardy Clause prohibits the modification of conditions of probation or supervised release if the new conditions are more restrictive or constitute enhancements of the punishment initially imposed. *See, e.g.*, *Commonwealth v. Goodwin*, 933 N.E.2d 925, 932-34 (Mass. 2010); *Marunich v. State,* 151 P.3d 510, 517 (Alaska 2006); *Lippman v. State*, 633 So. 2d 1061, 1063-64 (Fla. 1994). Others conclude that there is no violation of the Double Jeopardy Clause because the conditions of probation or supervised release do not constitute punishment, or that the modification is constitutionally permissible because a defendant on probation or supervised release does not have a legitimate expectation that his conditions will remain unchanged. *See, e.g.*, *Stephens v. State*, 716 S.E.2d 154, 160-61 (Ga. 2011); *Weaver v. State*, 856 So. 2d 407, 410 (Miss. App. 2003); *In re J.G.*, 993 P.2d 1055, 1057-58 (Ariz. App. 1999). Given the differences in their criminal sentencing schemes, we have not put great weight on the conflicting positions staked out by the state courts.

expectation of finality in the length of a lawful sentence because '[t]he Double Jeopardy Clause is a statute of repose for sentences as well as for proceedings.'") (citation omitted).  Given that a modification is reviewed for abuse of discretion, *see Grant*, 715 F.3d at 556-57, the district court must have some reasonable post-sentencing basis in the record for a modification, and cannot just simply have a change of heart about the sentence it originally imposed.  But, as we have noted, Mr. Serrapio does not contend that the district court abused its discretion in extending his term of home confinement with electronic monitoring based on his post-sentencing conduct.

We note, as well, that § 3563(c) does not provide carte blanche for a district court to change all aspects of the probationary sentence it originally imposed.  By way of example, some federal courts have ruled that § 3563(c) does not permit the modification of financial obligations in criminal cases, even if those obligations were initially couched as conditions of probation.  *See United States v. Wyss*, 744 F.3d 1214, 1217-18 (10th Cir. 2014) (restitution); *United States v. Iona Mgmt., S.A.*, 537 F. Supp. 2d 321, 322 (D. Conn. 2008) (fine).[3]

---

[3] What the Supreme Court said in 1932, in analyzing a federal statute which allowed a court to revoke or modify a condition of probation, applies with equal force to modifications under § 3563(c): "The question is whether there has been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion. That exercise implies conscientious judgment, not arbitrary action.  It takes account of the law and the particular circumstances of the case and is 'directed by the reason and conscience of the judge to a just result.'  While probation is a matter of grace, the probationer is entitled to fair

17

**IV**

Mr. Serrapio also asserts that district court erred in not providing him with the sort of process required in probation revocation proceedings under Rule 32.1(b) of the Federal Rules of Criminal Procedure, and that Rule 32.1(c), the provision governing modifications of probation, is unconstitutional because it does not provide the same procedural requirements as Rule 32.1(b).  Mr. Serrapio did not present these arguments to the district court, so our review is for plain error.  *See, e.g.*, *United States v. Frexias*, 332 F.3d 1314, 1316 (11th Cir. 2003); Fed. R. Crim P. 52(b).  This means that Mr. Serrapio must show that there was an error, that the error was plain, that the error affected his substantial rights, and that the error seriously affected the fairness of the proceeding.  *See, e.g.*, *United States v. Schmitz*, 634 F.3d 1247, 1268-71 (11th Cir. 2011).

In our view, there is no plain error.  The Ninth Circuit has rejected a similar due process challenge to Rule 32.1(c), *see United States v. King*, 608 F.3d 1122, 1130 (9th Cir. 2010), but even assuming there was any error, it did not seriously affect the fairness of the proceedings.  Mr. Serrapio and his attorney were able to discern the basis for the hearing, as evidenced by the fact that the attorney called Ms. Barrios and Mr. Barco before the hearing, and had the opportunity to address

---

treatment, and is not to be made the victim of whim or caprice." *Burns*, 287 U.S. at 222-23 (citation omitted).

the district court's concerns.  In addition, Mr. Serrapio's attorney apparently felt prepared to proceed, judging by his decision to not request a continuance once he learned of the reason for the modification hearing.

## V

Finally, Mr. Serrapio argues that the district court violated his First Amendment rights by increasing the term of home confinement with electronic monitoring based on the statements which appeared in *The Reporter*.  Exercising *de novo* review, *see United States v. Lyons*, 403 F.3d 1248, 1250 (11th Cir. 2005), we conclude that there was no constitutional violation.

A sentencing court "has always been free to consider a wide range of relevant material." *Dawson v. Delaware*, 503 U.S. 159, 164 (1992) (citations omitted).   With regard to expressive conduct, "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Id.* at 165.  Rather, the First Amendment only protects "a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried." *Id.* at 168 (holding that admission of evidence of defendant's association with the Aryan Brotherhood violated the First Amendment because it was not relevant to the defendant's sentencing proceeding).

19

Mr. Serrapio told Ms. Barrios that the whole ordeal "was pretty funny" to him and his friends, suggesting that he did not really understand the gravity of his offense.  He also commented that he could not be imprisoned in his "own house," indicating that he viewed the home confinement aspect of the original sentence as little more than an inconvenience.  And he noted, apparently with some satisfaction, that his rock band had benefited from the publicity surrounding his arrest: "[A] lot of good has come out of this, even for my music . . . I had a show that Saturday and a lot of people showed up to see the kid who threatened to kill the [P]resident[.]"

To the district court, these post-sentencing comments were relevant to the conditions of probation because they indicated that Mr. Serrapio did not grasp the seriousness of his conduct and did not think much of the probationary sentence he had received.  *See* 18 U.S.C. § 3553(a)(2)(A)-(B) (in determining what sentence to impose, court "shall consider," among other things, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct); 18 U.S.C. § 3563(b) (providing that court has discretion to impose special conditions of probation so long as they are reasonably related to the factors set forth in § 3553(a)(1) and (a)(2)).  Mr. Serrapio does not argue that the district court erred in so finding, and on this record that finding did not violate the First Amendment.

20

Simply stated, Mr. Serrapio was not punished for any abstract beliefs. *See, e.g.*, *United States v. Stewart*, 686 F.3d 156, 167 (2d Cir. 2012) (rejecting First Amendment challenge to sentence based in part on the defendant's public comments, which expressed a lack of remorse, because those comments were "legally relevant to a determination of the appropriate sentence to impose"); *Kapadia v. Tally*, 229 F.3d 641, 648 (7th Cir. 2000) ("Nothing in the Constitution prevents the sentencing court from factoring a defendant's statements into sentencing when those statements are relevant to the crime or to legitimate sentencing considerations.").

## VI

Mr. Serrapio's appeal is moot to the extent that it challenges the district court's modification of the conditions of probation to include a 45-day term in a halfway house. The appeal is not moot with respect to the district court's modification of the conditions of probation to include an additional eight months in home confinement with electronic monitoring, but that modification did not violate Mr. Serrapio's rights under the Double Jeopardy Clause, the Due Process Clause, or the First Amendment.

**DISMISSED IN PART AND AFFIRMED IN PART.**

21