[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10630

_____

D.C. Docket No. 8:13-cr-00500-RAL-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS SCHEWE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 2, 2015)

Before ED CARNES, Chief Judge, COX, Circuit Judge, and ROYAL,[*] District
Judge.

PER CURIAM:

_____

[*] Honorable C. Ashley Royal, United States District Judge for the Middle District of Georgia,
sitting by designation.

Nicholas Schewe appeals his sentence, which the district court imposed after revoking his supervised release.  He challenges the special condition forbidding him from having contact with his son without first receiving approval from his probation officer.

## I.

In September 2009, Schewe pleaded guilty to one count of conspiracy to possess with intent to distribute a mixture or substance containing oxycodone.  See 21 U.S.C. § 841(a)(1).  He was sentenced in February 2010 to thirty-four months in prison, followed by two years of supervised release.  His prison term ended in March 2012, at which point he was subject to the conditions of his supervised release.[1]  Those conditions required, among other things, that Schewe:  (1) not commit a crime; (2) report to his probation officer once a month; and (3) complete written reports to his probation officer once a month.

After his release from prison, Schewe lived with his girlfriend, Chrissa Belasco, and her two children from an earlier relationship.  The couple also had a child of their own, a son, who was an infant at the time of the events that led to the revocation of Schewe's supervised release.  Those events started in September 2013 when Belasco alerted law enforcement that Schewe "was hurting himself."

---

[1] After Schewe's prison term ended, jurisdiction over his supervised release was transferred from the United States District Court for the District of Maine (where he was sentenced) to the United States District Court for the Middle District of Florida.

2

State authorities institutionalized Schewe for a short period of time under Florida's Baker Act.  See Fla. Stat. § 394.451 et seq.  After several days, Schewe was released with a temporary supply of depression and anxiety medications and a referral to a mental-health provider.

On October 8, 2013, about one week after his release, the first incident of domestic violence occurred.  Schewe and Belasco got into an argument, and he started choking her.  When Belasco's teenage daughter heard the commotion and entered the room holding Schewe's infant son, he grabbed the teenager by the arm in an attempt to take his son from her.  Belasco called the police, and the Hernando County Sheriff's Office arrested Schewe on charges of:  (1) domestic battery by strangulation, see Fla. Stat. § 784.041(2)(a); and (2) child abuse without causing great bodily harm, see id. § 827.03(2)(c).  The State's child abuse investigator concluded that Schewe was not a risk to the family based on statements by the family members and Schewe's promise to continue seeking mental-health treatment.  The charges were eventually dropped.

Though the State did not take any further steps regarding the October 8 incident, the United States Probation Office did.  On October 29, 2013, the probation officer spoke with both Schewe and Belasco about the incident.  They told the officer that Schewe had taken mental-health medications before, and that those medications had kept him mentally stable.  They both believed that Schewe

3

could be "fully stable" again soon if he continued his medication regimen and enrolled in counseling "to address childhood issues." Based on that interview, the probation officer asked the district court to modify Schewe's conditions of supervision to include a requirement that he seek mental-health treatment. On October 30, 2013, a psychiatrist evaluated Schewe and diagnosed him as having bi-polar disorder and post-traumatic stress disorder. The psychiatrist prescribed a specific set of medications based on that diagnosis, and Schewe later told the probation officer that they were making him feel better and more stable.

But Schewe did not stay on his new medications long. He missed his medication management appointment on November 21, 2013, and did not bring money to pay for his prescription at his next visit on December 5, 2013. Schewe's probation officer met with him at home on December 5 and asked for a urine sample, but the sample Schewe provided was room temperature, which indicated that it was not from that day. The officer scheduled an appointment to take another sample the next day at the probation office, but Schewe did not show.

On December 14, 2013, another incident of domestic violence occurred. Belasco and Schewe had an argument over the phone while he was out of the house. When he came home, he pushed the front door open and immediately put his hands around Belasco's neck. Though he did not press so hard that she

4

couldn't breathe, Schewe kept his hands around her neck for about ten minutes, and all while she was screaming at him to stop hurting her.[2]

Schewe left the apartment before any officers arrived, and the Hernando County Sherriff's Office obtained a warrant for his arrest that night.  Though he knew there was a warrant out for him, Schewe fled to New Jersey.  The Probation Office then petitioned the district court, seeking a warrant for Schewe's arrest and revocation of his supervised release based on violations of the conditions of his supervision.  The court issued a warrant on December 20, 2013, and Schewe was arrested in New Jersey on Christmas Day.

The government charged Schewe with three violations of the conditions of his supervision:  (1) new criminal conduct while on supervision, based on the December 14 attack, which amounted to Domestic Violence by Strangulation, see Fla. Stat. § 784.041(2)(a); (2) failure to report, based on Schewe missing his December 6 appointment at the Probation Office; and (3) failure to submit monthly reports, based on his not turning in the required written reports to his probation officer for May through November of 2013.  The government agreed to dismiss the first alleged violation in return for Schewe admitting that he committed the second and third violations.  When the court asked about the dismissal of the first violation, counsel for the government explained that Belasco had "indicated that

---

[2] This description of the events is from what Belasco told the probation officer.

5

she was not strangled on December 14, 2013,"[3] and the probation officer added that she had not pursued criminal charges for either incident of domestic violence because "[s]he [didn't] want to be the reason for him . . . having more problems than he already has."

After a colloquy with Schewe in which he admitted that he had violated two of the reporting conditions alleged in the Probation Office's petition, the district court turned to the matter of sentencing him. Schewe requested that, after his prison term ended, his supervised release be transferred to South Carolina so that he could be close to Belasco (who had moved there following the second incident of domestic violence). When the court asked what contact Schewe currently had with Belasco, he said that she accepted his collect calls every day, that "she actually wants me to stay with her," and that she had found "schooling and a bunch of other things" for him in South Carolina. The government disputed that, explaining that Belasco had told the probation officer that she did "not want to

---

[3] The government's statement that Belasco had "indicated that she was not strangled on December 14" does not necessarily contradict the probation officer's report relaying Belasco's statement that Schewe had put his hands around her neck on December 14. See supra note 2 and accompanying text. The government's characterization appears to be based on Florida law's definition of "strangulation," which involves "imped[ing] the normal breathing or circulation" of the victim. Fla. Stat. § 784.041(2)(a). Belasco's statement that she could still breathe while Schewe had his hands around her neck indicates that the assault did not legally qualify as a strangling. So the district court could reasonably conclude that the government's legal characterization of the December incident was accurate while still accepting the probation officer's factual description of that incident. Cf. United States v. Rudisill, 187 F.3d 1260, 1269 (11th Cir. 1999) (applying the clear-error standard to affirm an inference supported by the facts in the record).

6

have any type of relationship with the Defendant other than him being the father of her child." When the district court asked the probation officer why Belasco was accepting the calls, the officer explained that Belasco had said she wanted to help Schewe straighten himself out so that her child could "have a law abiding and mentally stable" father.

The court decided on a prison sentence of six months, followed by a thirty-month term of supervised release.[4] In addition to the ones it had previously imposed, the court added another special condition requiring Schewe to get approval from his probation officer before making contact with either Belasco or their son. Schewe objected to the limit on contact with his son, arguing that it violated his due process rights and was both procedurally and substantively unreasonable. The district court responded that the special condition was justified based on "his history and characteristics." It cited the two incidents of domestic violence as evidence that Schewe was "prone to committing acts of violence against" Belasco and pointed out that he had also assaulted Belasco's teenage daughter in October. The court explained that the special condition was "appropriate" in light of the danger that Schewe posed to Belasco and the children

---

[4] Both of the violations to which Schewe admitted were Grade C violations. See United States Sentencing Guideline § 7B1.1(a)(3)(B). Those two Grade C violations, coupled with his criminal history category of I, resulted in a guidelines range of 3 to 9 months of imprisonment and 24 to 30 months of supervised release. See id. § 7B1.4(a). So he was sentenced to a prison term in the middle of his guidelines range and a term of supervised release that was the maximum length permitted.

because "all he has to do is get himself straight [and] convince the Probation Office."

Schewe also objected that the court was basing his sentence on the allegation of Domestic Violence by Strangulation that the government had agreed to dismiss. He argued that "there [was] no evidence of strangulation" and submitted pictures of Belasco's neck from December 14 that "show[ed] no marks of strangulation."[5] The district court accepted the evidence into the record and implicitly overruled the objection.

The court issued its written judgment that same day. The judgment stated: "The defendant shall not have any contact with Chrissa Belasco and his child without the approval [of] the probation officer while incarcerated and while on supervised release." This is Schewe's appeal.

## II.

Schewe challenges the district court's imposition of the special condition that, during his supervised release, he cannot have contact with his son without first receiving permission from his probation officer.[6] In his view, that special

---

[5] Schewe's objection matched the government's legal characterization in that he did not deny that he had put his hands around Belasco's neck. He asserted only that there was no proof of strangulation. See supra note 3.

[6] Schewe's initial brief also challenges the portion of the district court's judgment that, during his imprisonment, barred him from having contact with his son without first receiving approval from his probation officer. Schewe was released from prison on June 18, 2014, which the parties agree moots his challenge to that portion of his sentence. They are correct, and we

condition is a violation of his "constitutionally protected liberty interest in the care, custody and management of" his son. Maddox v. Stephens, 727 F.3d 1109, 1118–19 (11th Cir. 2013) (quotation marks omitted). Even when the defendant raises a constitutional challenge, we review the imposition of a special condition of supervised release only for an abuse of discretion. See United States v. Zinn, 321 F.3d 1084, 1092 (11th Cir. 2003) (applying the abuse of discretion standard to a First Amendment challenge to a special condition). Under that standard, we will reverse only "where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." United States v. Brown, 415 F.3d 1257, 1266 (11th Cir. 2005).

Under 18 U.S.C. § 3583(d), a district court may impose "any condition" on a defendant's term of supervised release so long as § 3583(d)'s three criteria are satisfied. First, the special condition must be "reasonably related" to the sentencing factors set out in § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D). See 18 U.S.C. § 3583(d)(1). Second, it must "involve[] no greater deprivation of liberty than is reasonably necessary" to satisfy the sentencing factors set out in § 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D). See 18 U.S.C. § 3583(d)(2). Those first two criteria do not mean that the special condition has to be justified by every one

---

therefore lack jurisdiction to address that issue. See United States v. Serrapio, 754 F.3d 1312, 1317 (11th Cir. 2014); United States v. Farmer, 923 F.2d 1557, 1568 (11th Cir. 1991).

of the sentencing factors.  See Zinn, 321 F.3d at 1089 ("[I]t is not necessary for a special condition to be supported by each factor enumerated in § 3553(a).").  Finally, the special condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(a)."  18 U.S.C. § 3583(d)(3).[7]  We address each statutory criterion in turn.

We begin with whether the special condition is reasonably related to the statutory sentencing factors.  See id. § 3583(d)(1).  The special condition at issue in the present case reasonably relates to "the history and characteristics of the defendant," id. § 3553(a)(1), as well as to "the need . . . to protect the public from further crimes of the defendant," id. § 3553(a)(2)(C).  The limitation on contact with his son is based on Schewe's history of committing acts of domestic violence when he is not receiving mental-health treatment, which has put his son in danger in the past (part of Schewe's history and characteristics) and could put his son at risk in the future (relevant to protection of the public from further crimes).  The district court explained that it was imposing the special condition based on the two earlier incidents of domestic violence:  Schewe's assaults on Belasco and her teenage daughter in October as well as his assault on Belasco in December.  Schewe does not dispute that the two incidents occurred, nor does he question the

---

[7] We have also held that the statute should be read together with United States Sentencing Guideline § 5D1.3.  See United States v. Okoko, 365 F.3d 962, 967 n.5 (11th Cir. 2004).  None of the provisions in § 5D1.3 are relevant to the special condition at issue here, so we will not discuss that guideline any further.

descriptions of them on which the district court relied.[8]  Instead, he argues that his conduct during those two incidents is irrelevant to his contact with his son because neither involved an attempt to hurt the infant.

Schewe's argument overlooks the fact that his assault on Belasco's daughter was committed as part of an attempt to pull his infant son away from her while she held him.  Given that fact, the district court could reasonably conclude that the special condition was related to the sentencing factors.  While Belasco's daughter was holding his son, Schewe grabbed her and tried to wrestle the infant from her. If she had dropped the infant, he could have been seriously injured.  Because Schewe's history of committing acts of domestic violence had put his son in danger, there was a reasonable relation between the limitation on contact with his son and his history and characteristics.  See id. § 3553(a)(1); see also United States v. Bull, 214 F.3d 1275, 1278 (11th Cir. 2000) (holding that a special condition requiring the defendant to participate in mental-health treatment was reasonably related to his history and characteristics because of his record of domestic violence,

---

[8] Schewe points out that he presented pictures at the hearing in an attempt to prove that he did not strangle Belasco.  But he did not object to or contradict the probation officer's report that, during the December incident, he placed his hands around Belasco's neck, she screamed for ten minutes for him to let her go, and he frightened Belasco's daughter to the point that she called the police.  See supra note 5 and accompanying text.  Nor did he contest that he assaulted Belasco and her daughter in October and that his assault on her daughter was an attempt to pull his infant son away from her.  See id.  The district court could therefore rely on those unobjected-to facts to conclude that both incidents of domestic violence occurred as Belasco had described them to the probation officer.  See supra note 3; see also Rudisill, 187 F.3d at 1269 (applying the clear-error standard to affirm an inference supported by the facts in the record).

which was connected with his mental health). We cannot say that the district court committed a clear error in judgment when it concluded that the special condition was reasonably related to the sentencing factors.

We turn next to whether the special condition involved a deprivation of Schewe's liberty that was greater than reasonably necessary to achieve the objectives of the statutory sentencing factors. See 18 U.S.C. § 3583(d)(2). The special condition imposes only a minor burden on Schewe's parental rights. It permits him to have contact with his son so long as he receives approval from his probation officer first. In order to obtain that approval, all Schewe has to do is "get himself straight" — i.e., stay sober and follow his mental-health treatment — and show his probation officer through his adherence to the conditions of his supervised release that he is stable enough to be around Belasco and their son. That burden is not only light, but also well-tailored to the district court's concern with Schewe's history and characteristics, as well as his son's safety. The district court relied on evidence indicating that Schewe's mental-health issues and substance abuse were directly related to his history of committing acts of domestic violence. The court did not abuse its discretion by requiring him to commit to, and continue, his mental-health treatment and sobriety (in the district court's words to "get himself straight") because it is key to preventing further incidents.

12

Furthermore, Schewe's probation officer is best positioned to monitor his commitment to his mental-health treatment and his sobriety and to decide when it would be appropriate and safe for Schewe to have contact with his son. Cf. Zinn, 321 F.3d at 1092 (acknowledging "the vital role probation officers fulfill in effectuating the district court's sentence"). We have recognized that making a special condition subject to the probation officer's approval is a "relatively narrowly-tailored condition" that prevents a restriction from being "overly broad." Id. (holding that a prohibition on the defendant's use of the internet without first receiving approval from the probation officer was "not overly broad"). There was no clear error in judgment here.

Finally, we consider whether the special condition is inconsistent with any policy statements from the Sentencing Commission. See 18 U.S.C. § 3583(d)(3). It is not. Schewe does not even attempt to identify a policy statement that conflicts with the special condition, and we are not aware of one that does. Thus, the district court did not commit a clear error of judgment under § 3583(d)'s last criterion.

None of Schewe's contrary arguments are persuasive. Schewe's first contention is that, because the special condition implicated his constitutional rights, the district court erred by not employing heightened factfinding and tailoring standards to justify the special condition. In making his argument, he relies exclusively on precedent from other circuits that require special procedures

13

or impose heightened scrutiny when a special condition burdens a constitutional right. See, e.g., United States v. Wolf Child, 699 F.3d 1082, 1089–94 (9th Cir. 2012) (requiring the district court to make "enhanced" findings before imposing a special condition that implicates the defendant's constitutional rights); United States v. Reeves, 591 F.3d 77, 82–83 (2d Cir. 2010) (applying strict scrutiny analysis to special conditions that burden the defendant's constitutional rights). But our own precedents do not require heightened procedures or strict scrutiny. See, e.g., United States v. Taylor, 338 F.3d 1280, 1284 (11th Cir. 2003) (reviewing a Fifth Amendment challenge to a special condition and doing so without imposing special procedural requirements or applying heightened scrutiny); Zinn, 321 F.3d at 1092–93 (doing the same when reviewing a First Amendment challenge). And we are bound to follow our precedent. See Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).

Schewe also contends that the district court's sentence was not "reasonably related" to the sentencing factors identified in 18 U.S.C. § 3583(d)(1). He argues that the special condition was not based on the "nature and circumstances of the offense" because neither his underlying drug conviction nor his technical violations of the terms of his supervised release involved abuse of an infant. See 18 U.S.C. § 3553(a)(1). That is true, but a special condition does not need to meet all of the sentencing factors listed in 18 U.S.C. § 3583(d)(1). See Zinn, 321 F.3d at

14

1089.  And the district court did not abuse its discretion by emphasizing Schewe's history and characteristics and the need to prevent future crimes that could put his son at risk.  See id.

**AFFIRMED.**